2020 IL App (1st) 173105-U

No. 1-17-3105

February 13, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 1810 |
| | ) | |
| ROOSEVELT PATTERSON, | ) | Honorable |
| | ) | Joseph Michael Claps, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for possession of a controlled substance is affirmed over his contentions that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt and (2) trial counsel was ineffective for failing to file a motion to suppress his statement.

¶ 2    Following a bench trial, defendant Roosevelt Patterson was convicted of possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) and sentenced to 30 months' imprisonment. On appeal, defendant contends that the evidence was insufficient to prove him

guilty beyond a reasonable doubt and trial counsel was ineffective for failing to file a pretrial motion to suppress his statement. For the following reasons, we affirm.

¶ 3    Defendant was charged with delivery of fentanyl within 1,000 feet of a school and possession of fentanyl with intent to deliver within 1,000 feet of a school.

¶ 4    At trial, Chicago police officer Erik Haney testified that, on January 3, 2017, about 4:07 p.m., he was in the passenger seat of an unmarked police vehicle with Officers Justin Conner, McCarthy, and Acevedo.[1] Conner was driving and McCarthy and Acevedo were in the back seat. Haney was in plainclothes with his vest and gun belt visible. As the officers drove eastbound in an alley between Harrison Street and Flournoy Street towards Francisco Avenue, Haney observed defendant, whom he identified in court, with another person, later identified as John Bentley. Haney was approximately 60 to 70 feet away from defendant. It was daylight and the front windows of the vehicle were not tinted. Haney observed defendant hand Bentley a "small white item" and told the other officers he thought defendant had just "served that guy." Defendant looked in the officers' direction and then ran northbound on Francisco towards Harrison.

¶ 5    When defendant fled, Conner stopped the vehicle. Acevedo exited and detained Bentley for further investigation. The other officers continued to pursue defendant in their vehicle. Haney lost sight of defendant for approximately two to three seconds when defendant turned the corner onto Harrison. The officers turned the corner and caught up with defendant after a short distance. Defendant stopped running and Haney immediately detained him. Approximately 5 to 10 seconds elapsed between the time defendant looked at the police car and when Haney detained him. Haney did not recall defendant saying anything to him after he had been detained and acknowledged that

_____

[1] Officers McCarthy's and Acevedo's first names do not appear in the record on appeal.

defendant had talked with Conner. Haney learned Acevedo had recovered from Bentley two Ziploc bags stapled together with "blue devil" logos on them containing suspected heroin. Haney also learned that Conner had recovered two additional bags with blue devil logos stapled together containing suspected heroin. He further learned that defendant admitted to Conner that the bags were his and he dropped them. Both defendant and Bentley were placed into custody. Haney believed $126 in cash was recovered from defendant after a custodial search.

¶ 6     Conner and Acevedo each gave Haney the stapled Ziploc bags that they had respectively recovered. Haney inventoried both sets of Ziploc bags pursuant to Chicago Police Department procedures. In court, he identified the inventory items containing the Ziploc bags recovered from Bentley. He also identified the inventory item containing the Ziploc bags.

¶ 7     Haney had made other arrests in that area within six months of the incident and had made between 8 and 10 arrests "right in that block." He had observed over a thousand prior narcotics transactions and had made "well over" a thousand narcotics arrests. When Haney observed the exchange between defendant and Bentley, he believed it was a narcotics transaction.

¶ 8     On cross-examination, Haney testified that there was nothing to indicate the officers were police other than the "private license plates" on their vehicle. When he initially observed defendant, the officers' vehicle had been moving. Defendant had been standing across from a vacant lot near a car wash. Haney's car window was partially open. He did not wear glasses and was not using binoculars on the day in question. Haney acknowledged that when he saw defendant hand Bentley an item, he did not know what the item was, but saw that it was "a small item consistent with narcotic packaging." He also acknowledged he could not hear the conversation between defendant and Bentley. He did not see anything in defendant's hands before or after losing

sight of him when defendant turned onto Harrison, nor did he observe defendant drop anything. Although Haney stated that he "might have yelled something out the window," defendant stopped running on his own. Haney did not believe he or McCarthy patted defendant down when they first detained him. He did not see any narcotics in defendant's hands at that time or in the immediate area. Conner recovered the bags that were attributed to defendant, and Haney did not witness Conner recover those items. Haney was not present when defendant gave a statement to Conner and did not prepare any reports in this case.

¶ 9 Chicago police officer Justin Conner testified he was driving the unmarked vehicle on the date in question. After Haney informed him that defendant, whom Conner identified in court, had "served" Bentley, Conner saw defendant running north on Francisco and then east on Harrison. He lost sight of defendant for "approximately three seconds" when defendant turned the corner. Defendant eventually stopped running on his own, and Haney physically detained him.

¶ 10 Conner exited the vehicle and began to "backtrack" defendant's "path of flight." In tracing defendant's path, Conner recovered a clear Ziploc bag stapled to a second, torn Ziplock bag. Each bag had a blue devil logo on it and contained suspected heroin. Conner recovered the bags approximately 200 or 250 feet from where defendant had been detained by Haney, which was in the vicinity of two schools. While on the scene, Conner showed the bags to defendant and told him that he saw him throw the items while fleeing. In response, defendant stated that Conner "was right but that he had just bought them." Conner acknowledged that, despite what he told defendant, he did not actually witness him drop the items. He clarified that defendant did not actually admit to dropping the bags but agreed when Conner confronted him and stated he had observed defendant

drop them. Conner kept the bags in his care and later gave them to Haney to inventory at the police station.

¶ 11    On cross-examination, Conner testified he did not observe the exchange between defendant and Bentley. When Conner first saw defendant, he had been running. He did not see anything in defendant's hands as he ran, nor did he see defendant reach into his pockets or drop anything to the ground. Conner likewise did not observe anything in defendant's hands after he had been detained and did not see any white powder on defendant's clothing. Conner did not create reports in this case but reviewed the reports that had been created prior to trial. He acknowledged that defendant's statement that he had just purchased the suspected narcotics was not contained in the reports generated.

¶ 12    The parties stipulated that, if called, Officer Acevedo would testify he was on patrol with Haney, Conner, and McCarthy on the relevant date. After learning one of the officers observed a hand-to-hand transaction between defendant and Bentley, Acevedo approached Bentley. Acevedo observed Bentley "standing with" defendant, whom he would identify in court. Following a custodial search of Bentley, Acevedo recovered two bags containing suspected narcotics. The bags had blue devil logos on them. He did not recover any money from Bentley. Acevedo placed Bentley into custody and would identify in court the items he recovered from Bentley.

¶ 13    Forensic scientist Danielle Adair testified that she received two inventories related to this case. The first inventory contained two Ziploc bags with powder. The second inventory contained one Ziploc bag with powder. Adair first performed a "color test" on the three items, and each tested positive for the possible presence of fentanyl. She next performed a gas chromatograph mass spectrometer test on the items, which revealed all three samples contained fentanyl. In Adair's

opinion, within a reasonable degree of scientific certainty, the first inventory contained 0.8 of a gram of powder containing fentanyl and the second inventory contained 0.3 of a gram of powder containing fentanyl.

¶ 14    On cross-examination, Adair acknowledged that her lab report listed "John Bentley" as the suspect for the first inventory, containing 0.8 of a gram of fentanyl. Her lab report used information obtained from the Chicago Police Department inventory sheet. The suspect related to the second inventory was defendant.

¶ 15    The court granted defendant's motion for a directed finding with respect to the count for delivery of a controlled substance. Following arguments, the court found defendant guilty of possession. In doing so, the court found that the evidence proved defendant was in possession of a controlled substance but did not prove he had intent to deliver because it was "just as likely" that defendant had purchased the narcotics, "as he told the police."

¶ 16    The court denied defendant's motion to reconsider or alternative for a new trial and sentenced defendant to 30 months' imprisonment.

¶ 17    On appeal, defendant first contends the evidence was insufficient to prove him guilty of possession of a controlled substance beyond a reasonable doubt. Specifically, defendant argues the only connection he had to the recovered narcotics was his own admission, which was unreliable because it was not mentioned in the police reports or conform with other evidence.

¶ 18    On a challenge to the sufficiency of the evidence, we inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison,* 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In so

doing, we draw all reasonable inferences in favor of the State (*Davison*, 233 Ill. 2d at 43), and we do not retry the defendant (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). We will not overturn a criminal conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens,* 237 Ill. 2d 311, 334 (2010).

¶ 19   To prove defendant guilty of possession of a controlled substance, the State was required to prove that "the defendant had knowledge of the presence of the narcotics and that the narcotics were in the defendant's immediate and exclusive control." *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. A defendant's possession can be either actual or constructive. *Id.* Actual possession is proved by testimony that the defendant exercised some form of dominion over the contraband, such as trying to conceal it or throw it away. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Knowledge and possession are factual issues, and we will not disturb the trier of fact's findings on these questions unless the evidence is so unbelievable or improbable that it creates a reasonable doubt as to the defendant's guilt. *People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007).

¶ 20   Taking the evidence in the light most favorable to the State, we find the evidence was sufficient to prove defendant possessed the two bags of fentanyl. The evidence showed Officer Haney observed defendant engaged in what appeared to be a narcotics transaction with Bentley. Bentley was immediately detained, and Acevedo recovered from him two stapled Ziploc bags with a blue devil logo containing suspected narcotics. Defendant fled, and the other officers pursued him in their vehicle. Haney lost sight of defendant for three seconds, when defendant turned a corner. After the officers turned the corner, defendant had stopped and was detained. The entire

incident took between 5 and 10 seconds. When Officer Conner retraced defendant's flight path, he recovered two additional stapled Ziploc bags with a blue devil logo that contained suspected narcotics. Conner told defendant he observed him dropping the bags, and defendant admitted that he had just purchased the narcotics. This evidence supports an inference that defendant was in possession of the bags during his interaction with Bentley and dropped them during his flight from the officers in the time they lost sight of him. See *People v. Dismuke*, 2013 IL App (2d) 120925, ¶ 16 ("dominion" includes attempts to conceal or throw away illicit material).

¶ 21    In reaching this conclusion, we are unpersuaded by defendant's contention that the evidence was insufficient because his statement was unreliable as it was inconsistent with other evidence, not contained in the police reports, and was the only evidence linking him to the narcotics. The trial court, sitting as trier of fact, heard the evidence, including Conner's testimony that he did not prepare any reports in this case and his acknowledgment that defendant's statement did not appear in the police report he reviewed prior to trial. The court also heard Haney's testimony that he observed defendant hand an item to Bentley, while Conner testified that defendant stated he purchased the narcotics. It is within the province of the trier of fact "to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *Siguenza-Brito*, 235 Ill. 2d at 228. The court resolved the apparent inconsistency between Haney's observation of the transaction and defendant's statement in favor of defendant by concluding it was "just as likely" that he had purchased the narcotics and finding the State failed to prove his intent to deliver the substances. Further, although the court did not make factual findings on the record regarding the credibility of

the witnesses in finding defendant guilty of possession, it apparently, given its ruling, found Conner's testimony credible despite the absence of the statement in the police report.

¶ 22    More importantly, however, and contrary to defendant's contention, his statement was not the only evidence linking him to the contraband. Bentley, with whom defendant was seen engaging in an apparent narcotics transaction, was found with narcotics in the same type of logoed Ziploc bags that were recovered from where defendant had been running. Although Conner and Haney acknowledged at trial that they did not see defendant drop the bags or with anything in his hands, the totality of the evidence supports an inference that defendant had possessed the recovered narcotics. See *People v. Love*, 404 Ill. App. 3d 784, 788 (2010) (possession is often proved by circumstantial evidence). Moreover, "[a] trier of fact is not required to disregard the inferences that normally flow from the evidence or to seek out all possible explanations consistent with a defendant's innocence and elevate them to reasonable doubt." *People v. Murphy*, 2017 IL App (1st) 142092, ¶ 11. Accordingly, we do not find "the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens,* 237 Ill. 2d 311, 334 (2010).

¶ 23    Next, defendant argues counsel was ineffective for failing to file a pretrial motion to suppress his statement where there was no evidence to show he was advised of his *Miranda* rights.

¶ 24    "To prevail on a claim of ineffective assistance, a defendant must show both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency." *People v. Edwards*, 195 Ill. 2d 142, 162 (2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Because "[a] defendant must satisfy both prongs of the *Strickland* test in order to prevail," our analysis of those prongs may proceed in either order. *In re Edgar C*., 2014 IL App (1st) 141703, ¶ 79.

¶ 25    The decision whether to file a motion to suppress is generally a matter of trial strategy entitled to great deference. *People v. Bew*, 228 Ill. 2d 122, 128 (2008). There is a strong presumption that counsel's conduct is reasonable and judicial scrutiny should be highly deferential. *Id.* at 163. "[W]here an ineffectiveness claim is based on counsel's failure to file a suppression motion, in order to establish prejudice under *Strickland,* the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15.

¶ 26    In this case, regardless of whether counsel was deficient in failing to file a motion to suppress, we find defendant is unable to demonstrate he was prejudiced by counsel's performance because there is no reasonable probability that the trial outcome would have been different had the statement been suppressed. See *Strickland*, 466 U.S. at 697 (where a defendant fails to satisfy the prejudice prong, a reviewing court need not determine whether counsel's performance was deficient). As previously detailed, Haney observed defendant and Bentley engage in what he believed to be a narcotics transaction. Upon seeing the officers, defendant fled. Bentley was immediately detained, and Acevedo recovered from him two Ziploc bags with blue devil logos stapled together and containing suspected narcotics. Defendant was detained within 10 seconds of seeing the police vehicle, according to Haney's testimony, and Conner recovered from defendant's path two additional Ziploc bags with blue devil logos stapled together and containing suspected narcotics. Given Haney's observation of the exchange between defendant and Bentley, the Ziploc bags recovered from defendant's flight path, and the uniqueness of the narcotics packaging on both sets of bags, we cannot say that there is a reasonable probability that the outcome of the trial would

have been different without defendant's statement. Accordingly, because defendant cannot show that he was prejudiced by counsel's failure to file a motion to suppress his statement his claim of ineffective assistance fails.

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.