2025 IL App (1st) 232443-U

FIRST DISTRICT,
SIXTH DIVISION
February 21, 2025

No. 1-23-2443

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, Illinois. |
| | ) | |
| v. | ) | No. 23 CR 02514 |
| | ) | |
| ROGELIO GOMEZ, | ) | Honorable |
| | ) | Pamela Stratigakis, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We reverse defendant's conviction for aggravated unlawful use of a weapon for carrying an "uncased, loaded, and immediately accessible" firearm where the State failed to present evidence that the firearm was loaded.

¶ 2    Defendant Rogelio Gomez was convicted by a jury of aggravated unlawful use of a weapon (AUUW) and sentenced to one year of imprisonment. On appeal, he argues the evidence was insufficient to convict him of carrying a "loaded" firearm where the firearm recovered was unloaded and no witness saw him in possession of a loaded firearm. We find the State failed to prove the firearm was "loaded" and reverse Gomez's conviction.

¶ 3                                I. BACKGROUND

¶ 4          At around 11:30 p.m. on February 17, 2023, Officer Bernard Hernandez, Officer Jason

Bulkley, and Officer Anthony Rosen were patrolling the Little Village neighborhood in a marked

police squad car. It was a cold February night with snow on the ground.

¶ 5          As Hernandez turned from 23rd Street onto Whipple Street, Bulkley saw approximately

five to eight people, including Gomez, in the middle of the street. The people turned to look at

the squad car, and then Gomez "br[oke] away from the group" and began running west into a

gangway. Bulkley observed that he was hunched over and grabbing his front waistline area as if

trying to secure a heavy object. Hernandez also testified that Gomez was leaning over and

holding his waistband area with both hands.

¶ 6          Hernandez stopped the car, and all three officers exited. Bulkley and Rosen chased

Gomez into the gangway while Hernandez "stood out front." Bulkley lost sight of Gomez when

Gomez entered the gangway. As Bulkley made his way down the gangway, Gomez reemerged

from behind a house and started coming back toward the street. Bulkley said Gomez "seemed

startled, panicked, kind of wide eyed, a little surprised that we had gone back there." Bulkley

detained Gomez and then had Rosen "hang on to him" while Bulkley went to "search the area

that [he] observed him coming out of."

¶ 7          Bulkley saw footprints in the snow and followed them to a back corner with debris on the

ground, including a blue drum and cinder block. Inside the cinder block, Bulkley spotted a

firearm. There was snow in the area, but no snow on the cinder block or the firearm. Bulkley

went back toward Rosen and signaled "143" with his hands—the police code for a firearm—and

then retrieved the firearm. He did not have rubber gloves with him and picked up the gun with

his bare hands. Although it was cold outside, the firearm did not feel cold but was "pretty much

room temp." The firearm was not loaded, but "right next to" it was an extended capacity magazine with live rounds inside.

¶ 8     After Bulkley recovered the firearm, he and Rosen walked with Gomez to their squad car. As they walked, Gomez asked them to pick up his phone that he had dropped in the gangway so he could call his father. Bulkley retrieved the phone for him, which was located "[a]pproximately half to three quarters towards the rear of the gangway."

¶ 9     Bulkley testified that the gangway was "in between" a two-flat house with windows in both front and back. He observed both the front and back of the house and did not see any lights on. Bulkley acknowledged he did not see Gomez with a gun upon first sight or when Gomez was going down the gangway, but he saw "an actual object" on "the right side of [Gomez's] body as he was hunching over."

¶ 10    Bulkley testified that he viewed the video footage from his body-worn camera and verified its accuracy. The recording was admitted into evidence and played for the jury. The video shows the officers stopping the squad car and exiting. It then shows Bulkley shining a flashlight down the vacant gangway. When Bulkley is about halfway down the gangway, Gomez is seen entering the gangway from the right and walking toward the officers. Gomez is detained, and Bulkley proceeds down the gangway and into the adjacent backyard. In the corner of the backyard, Bulkley shines his flashlight into a blue drum before shining it over a cinder block. Bulkley walks back toward the gangway, makes a hand signal to Rosen, and then returns to the cinder block, reaches down, and recovers a firearm that can be partially seen in the video. The remainder of the footage shows Rosen walking Gomez out of the gangway and into the squad car. No one besides Gomez and the two officers is seen in the gangway or in the backyard where the firearm was recovered.

¶ 11    While Bulkley and Rosen were chasing Gomez down the gangway, Hernandez "stood out front" and "[p]rovided security." Hernandez testified that the other people present on the scene were standing a few house lengths south of the gangway, and he did not see any of them enter the gangway at any point. Nor did he see anyone other than his two partners and Gomez exit the gangway. He estimated it was "[r]oughly two minutes" from the time they exited the car to the time they returned with Gomez.

¶ 12    At trial, the State proceeded against Gomez on a single charge, namely, that Gomez committed the offense of AUUW by knowingly carrying on or about his person an "uncased, loaded, and immediately accessible" firearm without a valid Firearm Owners Identification (FOID) Card or Concealed Carry License (CCL).[1] The parties stipulated that Gomez did not have a valid FOID Card or CCL on the date of the offense. Gomez called no witnesses in his defense. He was found guilty and sentenced to one year in prison with credit for 285 days served.

¶ 13                                    II. ANALYSIS

¶ 14    Gomez argues the evidence is insufficient to find him guilty of AUUW beyond a reasonable doubt. In reviewing the sufficiency of the evidence, it is not our function to retry the defendant. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). We are not required to search out all possible explanations consistent with the defendant's innocence or exclude every possible doubt. *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007); *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 74. Rather, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Jackson*, 232 Ill. 2d 246, 280 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); see also *People v.*

_____

[1] Gomez was initially charged under a multi-count indictment, which included a count for carrying "any" firearm without a FOID card. The State elected not to proceed on this count.

*Evans*, 209 Ill. 2d 194, 209 (2004) ("We will not reverse a conviction unless the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt.").

¶ 15     Under section 24-1.6(a) of the Criminal Code, a person commits the offense of AUUW if he knowingly "[c]arries on or about his or her person" any "firearm" if one of several enumerated factors is also present at the time of the offense. 720 ILCS 5/24-1.6(a) (West 2020). These factors include that the person had not been issued a valid FOID Card or CCL and the firearm was "uncased, loaded, and immediately accessible." 720 ILCS 5/24-1.6(a)(3)(A-5), (C) (West 2020). If both factors are present, a defendant is ineligible for a probationary sentence, and the minimum sentence is one year in prison. 720 ILCS 5/24-1.6(d)(2) (West 2020). Since Gomez was charged with this non-probationable offense, the State had to prove he knowingly possessed a firearm without a FOID Card or CCL and that the firearm was loaded.

¶ 16     Gomez contends the State's evidence was insufficient to show he possessed the firearm recovered from the cinder block. We disagree. "Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence." *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Here, there was significant circumstantial evidence linking Gomez to the firearm recovered by Bulkley. Initially, Gomez fled at the sight of the police car while hunched over and holding his waistline area as if trying to secure a heavy object. "It is well established that flight, when considered with all the other evidence, is a circumstance that a factfinder may consider as tending to prove guilt." *People v. Aljohani*, 2021 IL App (1st) 190692, ¶ 64; see also *People v. Harris*, 52 Ill. 2d 558, 561 (1972) (defendant's flight was admissible "as a circumstance tending to show consciousness of guilt").

¶ 17     Bulkley lost sight of Gomez when Gomez entered the gangway. When Gomez reemerged from behind a house and saw the approaching officers, he "seemed startled, panicked, kind of wide eyed, a little surprised that [the officers] had gone back there." Upon searching the area from which Gomez had emerged, Bulkley found a firearm and a magazine placed inside a cinder block. Despite it being a cold February night, the firearm was "pretty much room temp," suggesting it had recently been placed there. Moreover, Hernandez testified that none of the individuals in the street other than Gomez entered the gangway, and no one other than Gomez and the two officers exited the gangway. Viewing this evidence in the light most favorable to the prosecution (*Jackson*, 232 Ill. 2d at 280), a reasonable finder of fact could conclude that the "heavy object" Gomez held at his waistband was a firearm, and he fled from the officers and ran behind the house to conceal it within the cinder block. See *People v. Peete*, 318 Ill. App. 3d 961 (2001) (evidence was sufficient to convict defendant of unlawful possession of a weapon where he fled when approached by police and was seen reaching for his waistband during the pursuit, after which the pursuing officer briefly lost sight of him, and a firearm was later recovered from his flight path).

¶ 18     However, we agree with Gomez that the State failed to prove the firearm was loaded. When Bulkley recovered the firearm, it was unloaded, although a magazine with live rounds was found next to it. None of the State's evidence—Gomez's flight from police, the object at his waistband, his panicked demeanor at seeing the officers in the gangway, or the firearm being "room temp"—has any probative value as to whether the firearm was loaded while in Gomez's possession. Gomez's unprovoked flight and "panic" upon seeing the officers follow him into the gangway is circumstantial evidence tending to show he possessed the firearm without a FOID

Card, which itself is a crime. It may even suggest he had the magazine on him. However, there is no evidence the magazine was loaded into the gun while in Gomez's possession.

¶ 19    The State offers virtually no argument on this issue, save for a single conclusory assertion that the jury could reasonably infer that the gun was loaded with the magazine while in Gomez's possession. We disagree. No witness testified the gun was loaded, the gun was not found loaded, the magazine was found next to the gun but was not attached to it, and there is no circumstantial evidence to allow a rational trier of fact to find beyond a reasonable doubt that the gun was loaded while in Gomez's possession. It is telling that the State cites no case where a defendant was found guilty of carrying a *loaded* firearm based on the recovery of an *unloaded* firearm in his flight path. Although the State presented sufficient evidence that Gomez possessed the gun found by police, it failed to present evidence enabling a rational trier of fact to find beyond a reasonable doubt that Gomez was carrying a loaded gun. *Jackson*, 232 Ill. 2d at 280. Accordingly, we reverse.

¶ 20                        III. CONCLUSION

¶ 21    We reverse Gomez's conviction for AUUW where there was insufficient evidence to prove beyond a reasonable doubt that he carried a loaded firearm. Based on our ruling, we need not consider Gomez's alternative argument that the AUUW statute is facially unconstitutional. See *People v. Bass*, 2021 IL 125434, ¶ 30 ("courts must avoid reaching constitutional issues unless necessary to decide a case").

¶ 22    Reversed.