No. 2-08-1002     Filed: 10-7-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--1347 |
| TERRELL L. LOVE, | ) ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

Pursuant to a plea agreement, defendant, Terrell L. Love, pleaded guilty to robbery (720 ILCS 5/18--1(a) (West 2006)) in exchange for four years of probation. As a condition of his probation, defendant was ordered not to violate any criminal statutes or ordinances of any jurisdiction. While defendant was on probation, he was arrested for unlawful possession of cannabis with the intent to deliver (720 ILCS 550/5(c) (West 2006)), armed violence (720 ILCS 5/33A--2 (West 2006)), and unlawful use of a weapon by a felon (720 ILCS 5/24--1.1(a) (West 2006)). The State petitioned to revoke defendant's probation (730 ILCS 5/5--6--4 (West 2008)).[1] The trial court

---

[1] The charges forming the basis of the petition to revoke defendant's probation were also separately filed in case number 07--CF--4364. In that case, defendant moved to quash his arrest and suppress the evidence seized, arguing that there was no reasonable basis for the stop preceding the arrest. The trial court granted that motion, and the State dismissed case number 07--CF--4364.

granted the petition and sentenced defendant to six years' imprisonment. Defendant timely appeals, claiming that the State failed to prove that he violated the terms of his probation. We affirm.

The relevant evidence presented at the probation revocation hearing consisted of the following. Officer Dennis Hill testified that he was working with the Winnebago County sheriff's department on November 10, 2007. At approximately 12:15 a.m., he was on patrol when he stopped a car that had an obstructed windshield. Hill observed that there were three people in the car. Marcus Jones was driving the car, Elliot Cozzi was the front-seat passenger, and defendant was sitting in the backseat, behind Jones. As Hill approached the car, he saw that the driver's window was lowered approximately halfway, and Hill detected a strong odor of cannabis emanating from inside the car. Because Hill detected the smell of cannabis, he asked Jones to exit the car. Before Jones got out of the car, Jones placed his hand under the driver's seat.

Jones was placed in the back of Hill's squad car, as Hill was preparing to do a search of the car. Hill then asked defendant and Cozzi to exit the car. Although defendant exited the car before the search began, Cozzi, who was disabled and unable to walk or stand on his own, remained in the car until a person he contacted arrived. Hill frisked Cozzi to determine whether he was armed, but Hill did not pat Cozzi down in an attempt to see whether he was in possession of a controlled substance.

Before defendant exited the car, Hill saw in the backseat Cozzi's wheelchair and various articles of clothing. When defendant exited the car, Hill noticed a brown paper bag sitting on the

---

Although the State opted not to prosecute defendant for the offenses in case number 07--CF--4364, those charges and the evidence seized in that case may nevertheless be used in the case to revoke defendant's probation. See People v. Dowery, 62 Ill. 2d 200, 208 (1975).

backseat. Hill stated that the paper bag "was in a laid down position with like the top just folded over." The paper bag was folded over once and it was lying on its "long and wide side." Hill also testified that "if [defendant] was sitting on the seat, [the paper bag] would have been underneath his [right] thigh." Hill demonstrated for the court where the paper bag was located in relation to defendant's thigh, and the court clarified for the record that "[Hill] is indicating his hand is placed under the mid portion of his right thigh."[2] Given the location of the paper bag, Hill did not see the paper bag when he initially approached the car on the driver's side. Inside the paper bag was a handgun and cannabis. The cannabis was loose inside the paper bag and weighed 31.1 grams.

Although a handgun was discovered between the driver's seat and the center console and baggies of cannabis were found inside the console, under the driver's seat, and inside one of Jones's shoes, no contraband other than that in the paper bag was found in the backseat, and Hill noted in his report that defendant did not smell of cannabis. Hill also did not find any remnants of burnt cannabis in the car, and he never saw defendant holding the paper bag, any of the cannabis, or either weapon. When defendant was asked about the guns and the cannabis, he claimed that he did not know that any of those items were in the car.

For the most part, defendant testified consistently with Hill. However, defendant also testified that on November 9, 2007, he talked to Jones on the phone at approximately 11 p.m. Defendant asked Jones if he could give defendant a ride to the gas station to buy cigarettes. Jones arrived at defendant's house at 11:15 p.m. Before getting in the backseat of Jones's car, defendant noticed Cozzi's wheelchair behind the front passenger seat. Various other items, including a jacket, a sweater, and tennis shoes, were also lying on the backseat. Defendant pushed these items out of the way so

_____

[2]According to Hill's police report, the paper bag was next to defendant's thigh, not under it.

that he could sit down on the backseat. Although defendant did not disagree that the brown paper bag was probably sitting on the backseat, he testified that he never saw it. Moreover, although defendant asserted that he does not smoke cannabis, he admitted that he knows what burnt cannabis smells like, and he did not smell burnt cannabis in the car that night. Further, defendant denied knowing that there was cannabis in the car, having the paper bag under his thigh when Hill approached the car, and bringing into the car the paper bag, either gun, or any of the cannabis.

The trial court granted the petition to revoke defendant's probation. In doing so, the trial court noted that the brown paper bag, which was admitted into evidence, was smaller than a grocery bag but bigger than a brown paper lunch bag. More specifically, the court found that the bag measured about 10 inches across and 2 feet long. Concerning the gun that was discovered in the paper bag, the court found that the barrel measured 4½ to 5 inches in length, that the grip of the gun was 3 to 3½ inches long, and that the height of the gun's slide was 1 inch. Additionally, after recounting to what Hill and defendant testified, the court found Hill more credible than defendant. Thus, the court found that, because defendant was at least partially sitting on the bag, he was in actual possession of the bag. The court asserted that defendant knew what was in the bag, because defendant could not sit or partially sit on the bag, which contained the steel gun and cannabis, without knowing on what he was sitting.

At issue in this appeal is whether the State proved that defendant violated the terms of his probation. At probation revocation proceedings, the State is required to prove a probation violation by a preponderance of the evidence. 730 ILCS 5/5--6--4(c) (West 2006); People v. Jones, 377 Ill. App. 3d 506, 508 (2007). A proposition is proved by a preponderance of the evidence when the proposition is more probably true than not true. People v. Drake, 131 Ill. App. 3d 466, 472 (1985).

In evaluating whether the State met its burden, the trial judge is free to resolve inconsistencies in the testimony and to accept or reject as much of each witness's testimony as the judge pleases. See People v. Howard, 376 Ill. App. 3d 322, 329 (2007). Because the trial judge is in a superior position to weigh the evidence and decide on the credibility of the witnesses, we may not reverse the judgment merely because we might have reached a different conclusion. See People v. Houston, 118 Ill. 2d 194, 200 (1987). Rather, we will reverse the court's judgment revoking a defendant's probation only if it is against the manifest weight of the evidence. People v. Colon, 225 Ill. 2d 125, 158 (2007). A finding is against the manifest weight of the evidence only if the opposite result is clearly evident. People v. Keller, 399 Ill. App. 3d 654, 662 (2010). Thus, even where the State's evidence is slight, we must affirm the revocation of a defendant's probation as long as the opposite conclusion is not clearly evident. See, e.g., People v. Matthews, 165 Ill. App. 3d 342, 343-45 (1988) (in case where security officer testified only that he saw the defendant put on a jacket and leave the store without paying for it, reviewing court affirmed the revocation of the defendant's probation, because, even though evidence that the defendant violated his probation by committing a retail theft was scant, a conclusion that the defendant did not commit the crime was not clearly evident).

Here, defendant does not dispute that the paper bag was found in the backseat, that the paper bag contained a weapon and cannabis, or that he was a convicted felon. Rather, defendant argues that the State failed to prove that he was in possession of either the gun or the cannabis. Both defendant and the State agree that, if the evidence did not establish by a preponderance that defendant was in possession of the gun and cannabis found in the paper bag, defendant's probation should not have been revoked.

Because possession is often difficult to prove directly, proving possession frequently rests upon circumstantial evidence. See People v. Eghan, 344 Ill. App. 3d 301, 307 (2003). In a case based on circumstantial evidence, each link in the chain of circumstances does not need to be proved by a preponderance of the evidence if all the evidence considered collectively satisfies the trier of fact by a preponderance of the evidence that the defendant is guilty. See People v. Hall, 194 Ill. 2d 305, 330 (2000) (providing that, in a case where the defendant claims that he was not proved guilty beyond a reasonable doubt, each link in the chain of circumstances does not need to be proved beyond a reasonable doubt if all of the evidence considered collectively establishes the defendant's guilt).

Possession falls into two categories, i.e., actual and constructive. "Actual possession is proved by testimony which shows [that the] defendant exercised some form of dominion over the unlawful substance, such as trying to conceal it or throwing it away." People v. Scott, 152 Ill. App. 3d 868, 871 (1987). On the other hand, "constructive possession" arises when the defendant has the intent and capability to maintain control and dominion over the contraband. Eghan, 344 Ill. App. 3d at 307. Constructive possession may be proved by showing that the defendant had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found. People v. Ingram, 389 Ill. App. 3d 897, 899-900 (2009). A defendant's mere presence in a car where contraband is found is not enough to establish the defendant's knowledge of the contraband. Ingram, 389 Ill. App. 3d at 900. However, knowledge may be inferred from several factors, including (1) the visibility of the contraband from the defendant's location within the car; (2) the amount of time that the defendant had to observe the contraband; (3) any gestures or movements

made by the defendant that would suggest that the defendant was attempting to retrieve or conceal the contraband; and (4) the size of the contraband. Ingram, 389 Ill. App. 3d at 900.

Applying these principles in light of the facts presented here, we determine that the trial court's finding that defendant had possession of the cannabis and the gun is not against the manifest weight of the evidence. That is, the evidence established by a preponderance that, at a minimum, defendant had constructive possession of the bag containing the contraband. Before defendant got in the car, he noticed several items in the backseat. He saw Cozzi's wheelchair and various items of clothing. According to defendant, the clothing, which was lying in the area where defendant was going to sit, included a jacket, a sweater, and tennis shoes. Although defendant was able to describe all of these items, he claimed that he never saw the rather large paper bag that was also sitting on the backseat. As the State notes, "[t]he fact that [defendant] saw and could describe all of the other items he pushed aside raises a serious question as to the credibility of [defendant's] statement that he did not notice the substantially sized paper bag."

Added to this is the fact that the paper bag was not found underneath the clothes, the backseat, or Cozzi's wheelchair. Rather, according to Hill, whom the trial court found more credible than defendant, the paper bag was under defendant's right thigh. Defendant was at least partially sitting on that bag in that way for an hour. As the State observes, "[s]omeone who took such care to move noninvasive and soft items like a sweater, jacket, and pair of shoes out of the way so that he could sit in the back seat would surely move such a large bag with a hard object in it well out of his way simply for comfort's sake."

The fact that the bag was obscured from Hill's initial view into the car lends further support to the trial court's conclusion that defendant possessed the bag. That is, because the bag was hidden

from Hill, a reasonable inference arises that defendant knowingly possessed the contraband. See, e.g., People v. Rangel, 163 Ill. App. 3d 730, 740 (1987) (the defendant was found in knowing possession of a gun found in plain view on the floor of a car where the defendant had been sitting just before he exited the car). And, no one but defendant had control over the bag. Jones had already been removed from the car, and Cozzi's physical limitations prohibited him from accessing the backseat.

Defendant claims that the fact that Hill smelled cannabis when he approached the car, but never smelled cannabis on defendant, somehow mandates a conclusion that defendant could not be in possession of the paper bag. We find defendant's reliance on that fact unpersuasive. Hill never testified that he smelled burnt cannabis, and no burnt cannabis was found anywhere in the car or on Jones, Cozzi, or defendant. That fact is important, because the smell of burnt cannabis, which is very strong, is entirely different from the smell of cannabis that has not been used. Here, all of the cannabis found was unused and in some type of container. Thus, it is reasonable that, when defendant was removed from the car, Hill did not smell cannabis on defendant, who had no cannabis on him and had been sitting on cannabis that was in a paper bag.

Citing the facts that he did not own the car, he was not driving the car, other people were also in the car, and a weapon and cannabis were found on Jones and within his immediate control, defendant claims that the State failed to establish that he was in possession of the gun and cannabis found in the paper bag. We disagree.

This court has recently found that such facts do not defeat a finding that a defendant possessed contraband. In Ingram, the defendant was a front-seat passenger in a car that he did not own. Ingram, 389 Ill. App. 3d at 898. The seat in which the defendant was sitting was fully reclined, so that it was resting on the back passenger seat. Ingram, 389 Ill. App. 3d at 898. Two people other

than the defendant--a driver and a backseat passenger--were also in the car. Ingram, 389 Ill. App. 3d at 898.

After the car was stopped because its registration had expired, an officer saw a bullet cartridge and a bottle of liquor on the floor by the driver's seat. Ingram, 389 Ill. App. 3d at 898. Also found in the car was a handgun. Ingram, 389 Ill. App. 3d at 898. The handgun, which was in plain view, was lying on the floor directly behind the driver's seat. Ingram, 389 Ill. App. 3d at 898. Both the defendant and the backseat passenger would have had access to the gun. Ingram, 389 Ill. App. 3d at 901.

Based on these facts, a jury found the defendant guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon. Ingram, 389 Ill. App. 3d at 901. This court affirmed. Ingram, 389 Ill. App. 3d at 901. Although other evidence, like the defendant's flight from the car and his giving the officer an alias, supported a finding that the defendant was guilty, this court found that the facts that the defendant did not own the car, the defendant was not driving the car, other people in the car had access to the weapon, and other contraband was found in an area accessible to another occupant of the car did not defeat a finding that the defendant had possession of the weapon found on the floor behind the driver's seat. Ingram, 389 Ill. App. 3d at 900-01.

Here, as in Ingram, those same facts do not warrant a finding that the State failed to prove by a preponderance of the evidence that defendant was in possession of the gun and cannabis found in the paper bag. Although such facts might be persuasive in other cases, they are not so here, where the evidence revealed, among other things, that no one other than defendant had ready access to the contraband, that defendant was in the car for an hour, that defendant was sitting on the contraband, and that (given the contraband's size) the contraband must have been noticeable.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HUTCHINSON and BURKE, JJ., concur.