# Illinois Official Reports

## Appellate Court

---

### *People v. Horn*, 2021 IL App (2d) 190190

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KELLEN L. HORN, Defendant-Appellant. |
| District & No. | Second District No. 2-19-0190 |
| Filed Rehearing denied | June 18, 2021 July 9, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 17-CF-375; the Hon. C. Robert Tobin III, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellant. |
| | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and John G. Barrett, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BRENNAN delivered the judgment of the court, with opinion. Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant, Kellen L. Horn, was charged with possession of a controlled substance (at least 100 but less than 400 grams) (720 ILCS 570/402(a)(2)(B) (West 2016)) and possession with intent to deliver a controlled substance (at least 100 but less than 400 grams) (*id.* § 401(a)(2)(B)). A jury convicted him on both counts. On appeal, defendant claims (1) the police had no probable cause to arrest him, thus the trial court erred when it refused to suppress his inculpatory postarrest statements, (2) the State failed to prove his guilt on both counts beyond a reasonable doubt, (3) the trial court erred when it admitted his prior criminal conviction as substantive evidence and made prejudicial comments regarding the evidence, and (4) the trial court erred in failing to reduce his sentence. For the reasons that follow, we reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3 On November 29, 2017, defendant was riding as a passenger in a vehicle on I-90. His cousin, Markus Brown, was driving. Neither defendant nor Brown owned the vehicle. At approximately 1:45 p.m., Trooper Greg Melzer of the Illinois State Police (ISP) performed a traffic stop. During the stop, Melzer requested identification from both defendant and Brown. He subsequently learned that both men had suspended licenses. Melzer then had Brown exit the vehicle and sit in his patrol car while he wrote a citation.

¶ 4 Approximately three minutes after the stop, Trooper Alan Taylor arrived at the scene with his K-9 partner, Bart. About five to seven minutes after the stop, Melzer also requested Trooper Peter Skiba to come to the scene to assist. Trooper Taylor then walked Bart around the vehicle to perform a free-air sniff. Bart alerted to the presence of narcotics in the vehicle. Melzer asked defendant to exit the vehicle, and all three troopers conducted a search of the vehicle. During the search, the troopers discovered an urn in the trunk that contained a bag of ashes and a bag containing cocaine.

¶ 5 Defendant and Brown were arrested. The following day, defendant was charged with possession of a controlled substance and possession with intent to deliver. In December 2017, defendant was indicted on those charges.

¶ 6                                   A. Pretrial Motions
¶ 7                 1. Defendant's Motion to Quash Arrest and Suppress Evidence
¶ 8 In March 2018, defendant filed a motion to quash arrest and suppress evidence. Defendant argued that the troopers lacked probable cause to detain and arrest him such that evidence obtained as a result (specifically, statements made by defendant while in custody) was the fruit of impermissible detention. The trial court conducted a hearing on May 31 and June 6, 2018.

¶ 9 At the hearing, Melzer testified as follows. First, he explained that he was assigned to the criminal patrol team, whose goal was to investigate potential criminal activity on Illinois roadways rather than to issue traffic citations. State troopers were advised to issue written warnings, rather than citations, for speeding infractions of up to nine miles per hour over or under the limit. He stopped a vehicle occupied by defendant on November 29, 2017, at approximately 1:45 p.m.

¶ 10        Before making the stop, Melzer observed the vehicle traveling at 74 miles per hour in a 70 mile per hour zone and saw the vehicle's tires cross the dashed lane lines. After making the stop, he requested the vehicle's registration from the driver, Brown, and identification from defendant and Brown. He learned that Brown's license was suspended in Wisconsin and that the vehicle was not registered to either occupant. Melzer moved Brown to his patrol car to discuss his license status. Brown was placed under arrest but not handcuffed.

¶ 11        Trooper Taylor arrived next and spoke with defendant. He reported to Melzer that defendant told him that the men went to Chicago to purchase shoes for Brown's daughter at Nike Town. Melzer testified that defendant and Brown gave "conflicting stor[ies]" about what they had done that day, although he did not specify how their accounts differed. The discrepancy in the men's stories, combined with Brown's nervousness, made Melzer suspicious.

¶ 12        After Trooper Skiba arrived, Trooper Taylor had his K-9 partner Bart perform a free air sniff. Bart alerted to narcotics. Melzer had defendant exit the vehicle, while the other troopers searched it. They discovered an urn in the trunk that contained a package of ashes and a package with a white powdery substance, which field-tested positive for cocaine. The vehicle search disclosed no items belonging to defendant or bearing his name. The troopers then placed defendant under arrest and transported him to an ISP office referred to as Plaza 5.

¶ 13        Melzer further testified that he had seen the men earlier that day. At approximately 10:45 a.m., he observed a gray sedan driving eastbound on I-90. Since it matched the general description of a vehicle involved in an armed robbery in Rockford, he followed it into the Belvidere Oasis parking lot. Two men exited the vehicle. Melzer determined that neither matched the description of the men involved in the armed robbery and did not conduct any further investigation. He later recognized that the vehicle he pulled over for speeding was the same one he had seen earlier. Brown and defendant were the same occupants he had observed earlier.

¶ 14        Trooper Taylor testified at the hearing consistent with Melzer. He further explained that he did not know the basis for the stop upon arriving at the scene. Trooper Taylor nevertheless questioned defendant because the standard practice for officers following a stop of a vehicle with multiple occupants is to collect stories from each one to determine if somebody is being deceitful. He further testified that defendant was cooperative, polite, and did not appear nervous.

¶ 15        The State also introduced video exhibits from the troopers' dashboard cameras. The video from Melzer's car depicted Melzer's interaction with Brown during the stop. Brown tells Melzer that defendant was his cousin, that the car belonged to another one of Brown's cousins, and that the ashes were those of Brown's uncle. Melzer instructs one of the other troopers to take defendant out of the vehicle and pat him down. Brown explains that he and defendant had driven down from Wisconsin to Chicago to drop off his son with Brown's mother because he had to take care of his "sick baby." At one point Melzer asks Brown whether he had done any shopping, but Brown's response is inaudible. After Trooper Taylor's K-9 alerted to the presence of narcotics in the vehicle, Melzer asked Brown if there was a reason the K-9 would alert. Brown responded that he had smoked cannabis outside of the vehicle earlier in the day. Further, one of the troopers is heard stating that defendant was wearing an ankle monitor and asked Brown if defendant was on parole or probation. Brown's response is not audible.

¶ 16    Following the hearing and argument, the trial court issued a written order denying defendant's motion to quash arrest and suppress evidence. The court reasoned:

> "The troopers, collectively, had the following evidence: (1) Brown and the defendant traveled together from Wisconsin to Chicago and were on their way back home in Wisconsin; (2) the co-defendants provided a different reason for the trip—neither of which included picking up or transporting an urn with ashes of a person's remains; (3) contraband was found in an urn with what appeared to be ashes from a person's remains; (4) Brown and the defendant were related; (5) the ashes were those of Brown's uncle (which a reasonable inference could be made that the remains were also a relative of the defendant); and (6) the defendant was wearing an electronic monitoring bracelet on his ankle (which leads to a reasonable inference that he was on parole, probation, or pretrial release). The Court finds instructive *Maryland v. Pringle*, 540 U.S. 366 (2003) in finding that it was reasonable to believe that either or both of the co-defendants solely or jointly possessed the contraband."

Thus, the court concluded that the troopers had probable cause to arrest defendant and denied his motion to quash arrest and suppress evidence.

¶ 17                              2. The State's Fourth Motion *in Limine*

¶ 18    In October 2018, defendant filed a motion *in limine* seeking to bar the State from introducing evidence that defendant had previous convictions. Conversely, the State filed two motions *in limine* seeking to introduce defendant's (1) two prior convictions to impeach his credibility if he testified and (2) prior conviction for delivery of heroin to show his intent to deliver the cocaine found in this case. The trial court heard argument on the motions. It allowed the State to use the defendant's prior convictions for impeachment if defendant testified and further granted the State's motion to introduce defendant's delivery-of-heroin conviction to show defendant's intent to deliver cocaine.

¶ 19                                         B. Jury Trial

¶ 20    Melzer testified substantially as he did at the suppression hearing: he testified to (1) the traffic violations that formed the basis for his stop of the vehicle; (2) the arrival of Troopers Taylor and Skiba approximately 3 and 20 minutes later, respectively; (3) his discovery that Brown and defendant both had suspended licenses; (4) his communication with defendant at the scene;[1] (5) what he learned defendant had said to Trooper Taylor; (6) his observation that Trooper Taylor's K-9 partner alerted to the presence of narcotics in the vehicle; (7) the troopers' subsequent search of the vehicle and discovery of cocaine in an urn in the trunk; and (8) the arrest of defendant. Melzer further testified that the substance believed to be cocaine was transported back to Plaza 5. There, he emptied the contents into a new bag, which he sealed and labeled so it could be tested, and retained the original bag to search for fingerprints. Moreover, Melzer testified that, approximately three hours before the stop, he had seen Brown and defendant traveling eastbound in the same vehicle that he stopped. He saw the vehicle pull into the Belvidere Oasis and come to a stop. Both men exited the vehicle, which defendant had been driving. Although he did not know who the occupants were, he recognized them and the

---

[1]Unlike at the suppression hearing, Melzer did not testify at trial about statements made by Brown during the stop.

- 4 -

vehicle when he made the traffic stop later that day. On cross-examination, Melzer acknowledged that, aside from the urn, no personal items connected with defendant were discovered in the vehicle. He also acknowledged that he did not attempt to recover any fingerprints from the vehicle or the urn, stating, "I don't have that capability."

¶ 21 Trooper Taylor testified substantially as he did at the suppression hearing: he testified to (1) his arriving at the scene of the stop to assist Melzer, (2) his conversation with defendant about defendant's activities that day, (3) his conducting of a free air sniff of the vehicle with his K-9 partner, (4) the troopers' subsequent search of the vehicle and discovery of cocaine in an urn in the trunk, and (5) the arrest of defendant. Trooper Taylor further testified that he transported defendant to Plaza 5. There, he saw the urn recovered from the scene of the stop and observed that the bag believed to contain human ashes had what appeared to be an identification tag from a crematory. Within earshot of defendant, Troopers Gerald Ellis and Taylor discussed the possibility of using the information on the tag to identify the urn's remains. Trooper Taylor then sat in on an interview between Trooper Ellis and defendant, who admitted that the ashes were his father's. On cross-examination, Trooper Taylor acknowledged that his report did not include defendant's statement regarding the urn. He also conceded that defendant was cooperative, polite, and did not appear nervous during their conversation.

¶ 22 Trooper Ellis testified next. At the time of defendant's arrest, Trooper Ellis was assigned to the criminal interdiction team. He joined the investigation after Melzer requested his assistance. At Plaza 5, Trooper Ellis saw the urn and the identification tag on the bag of remains and discussed with Trooper Taylor the possibility of using the information on the tag to identify whose remains the urn contained. Trooper Ellis subsequently interviewed defendant, who stated that the ashes were his father's. On cross-examination, Trooper Ellis acknowledged that the written statement he obtained from defendant did not contain the admission that the ashes were his father's.

¶ 23 Penny Weinstein, a technician with the ISP Crime Lab, testified that she received the bag containing the white powdery substance recovered from the urn. The contents of the bag weighed 135.4 grams and tested positive for the presence of cocaine.

¶ 24 Moira McEldowney, a forensic scientist with the ISP Forensic Sciences Command, testified that she received the bag that contained the substance recovered from the urn. She processed the bag to develop fingerprint evidence but was unable to detect any impressions suitable for comparison.

¶ 25 Scott Bowers, a detective with the Boone County Sheriff's Department, testified as "an expert in the cocaine field." He explained that the quantity of cocaine recovered during the traffic stop (135.4 grams) was consistent with an amount that would have been sold at the wholesale level and would have cost approximately $5000 to purchase. He further testified that a street-level user generally would not possess the amount recovered and, in his opinion, the cocaine recovered was intended for distribution.

¶ 26 Finally, the State introduced into evidence a certified copy of conviction showing that defendant was convicted on January 11, 2013, of delivery of less than 3 grams of heroin. At that time, the trial court admonished the jury as follows:

> "THE COURT: Folks, that last piece of evidence that was tendered is admitted for a limited purpose and that purpose being as to whether or not the defendant possessed the cocaine with the intent; in other words, what the intent was to do with the cocaine, not really whether or not he possessed it.

- 5 -

So again, it goes towards whether or not—it's sort of similar to what the testimony you heard with Detective Bowers is what was meant to be done with the cocaine. You're really not to consider it for any other purpose."

The State rested its case. Defendant then rested without presenting evidence.

¶ 27 The jury found defendant guilty of possession of a controlled substance and possession with intent to deliver. Defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. He argued, among other things, that the trial court erred when it denied defendant's motion to suppress his postarrest statements and permitted the State to introduce a certified copy of defendant's prior conviction for delivery of heroin. He also argued that there was insufficient evidence to sustain the convictions. The trial court denied defendant's motion.

¶ 28                                   C. Sentencing

¶ 29 At the sentencing hearing, the State conceded that the conviction for possession merged into the conviction for possession with intent to deliver. Given the amount of cocaine recovered and defendant's prior conviction under the Illinois Controlled Substances Act, defendant was eligible for an enhanced sentence from 9 to 80 years' imprisonment. 720 ILCS 570/401(a)(2)(B), 408 (West 2016). The State recommended a sentence in the range of 22 to 25 years. Defendant argued in mitigation that (1) his conduct neither caused nor threatened serious harm to another, (2) he never contemplated that his conduct would cause such harm, (3) he had attained a high school diploma and maintained consistent work history, and (4) his absence would negatively impact his minor son, who would be in the care of defendant's 93-year-old grandmother.

¶ 30 The trial court acknowledged that defendant's conduct had not caused or threatened serious harm to another and that defendant had not contemplated such harm. It also noted that defendant's son would experience hardship due to defendant's incarceration. The court indicated, however, that it did not believe defendant was unlikely to reoffend:

"Is it unlikely to recur? I don't know. It doesn't look like it. I mean, it looks like he's got a fairly regular pattern of committing offenses. I know that based upon the statutory minimums, this will at least take him off the street for a little while and it won't occur then, but I don't know if it's going to recur. I wish it hadn't happened in this situation, but I can't say that it won't recur or that he's going to commit another crime.

There's nothing to learn that he's learned anything from prior sentencing. Again, does that mean that—as [defendant's trial counsel] suggested, maybe a sentence to the Department of Corrections in Wisconsin should have been done on some of the prior offenses, and if that had happened, maybe he wouldn't have done this. Maybe. I don't know. On the flip side, it's also possible that he's going to keep committing these offenses no matter what. I just don't know."

The trial court then sentenced defendant to 24 years' imprisonment to be served at 75% with 3 years' mandatory supervised release.

¶ 31 Defendant filed a motion to reconsider sentence, arguing that it was excessive because it was his first sentence to the penitentiary. The trial court denied the motion. Defendant timely

appealed.

¶ 32                                    II. ANALYSIS

¶ 33        Defendant raises several claims on appeal. First, the trial court erred when it denied his motion to quash arrest and suppress evidence because the troopers lacked authority to stop the vehicle in which he was traveling, search the vehicle, and arrest him after cocaine was discovered in the vehicle trunk. Second, the State presented insufficient evidence to prove defendant committed the charged offenses beyond a reasonable doubt. Third, the trial court erred when it permitted the State to introduce evidence of defendant's prior conviction for delivery of heroin to prove his intent to deliver cocaine. And fourth, the trial court erred in sentencing defendant to 24 years' imprisonment and refusing to reduce the sentence upon his motion to reconsider.

¶ 34                                A. Suppression Ruling

¶ 35        Defendant argues that the trial court erred in declining to suppress his statement about the urn because the troopers lacked sufficient cause to effectuate the stop, to search the vehicle, and to arrest defendant. A reviewing court applies a two-part standard of review to a trial court's ruling on a motion to suppress. See *People v. Kulpin*, 2021 IL App (2d) 180696, ¶ 39. First, the reviewing court accepts the trial court's findings of fact unless they are against the manifest weight of the evidence. *Id.* Second, it reviews *de novo* whether the search or seizure was illegal and the resulting evidence should have been suppressed. *Id.*

¶ 36        Initially we note that, other than stating the claims, defendant does not develop any argument that the trooper lacked sufficient cause to stop the vehicle for speeding or improper lane usage or that, after the K-9 alert, there was not probable cause to search the vehicle. Defendant does not argue that speeding is an impermissible basis to stop a vehicle or that the K-9 free-air sniff impermissibly prolonged the stop. Rather, defendant essentially argues that the stop and search were impermissible because the stop was pretextual. However, it is firmly established that an officer's subjective motivation is irrelevant to the existence of probable cause under the fourth amendment (U.S. Const., amend. IV). See *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Accordingly, these arguments are forfeited, and we turn to the question of whether there was probable cause to arrest defendant for possession of cocaine. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (argument section of brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited ***.").

¶ 37        In determining that the State had probable cause to arrest defendant for possession of cocaine and thus denying defendant's motion to suppress, the trial court made the following findings.

            "The troopers, collectively, had the following evidence: (1) Brown and the defendant traveled together from Wisconsin to Chicago and were on their way back home in Wisconsin; (2) the co-defendants provided a different reason for the trip— neither of which included picking up or transporting an urn with ashes of a person's remains; (3) contraband was found in an urn with what appeared to be ashes from a person's remains; (4) Brown and the defendant were related; (5) the ashes were those of Brown's uncle (which a reasonable inference could be made that the remains were also a relative of the defendant); and (6) the defendant was wearing an electronic

monitoring bracelet on his ankle (which leads to a reasonable inference that he was on parole, probation, or pretrial release). The Court finds instructive *Maryland v. Pringle*, 540 U.S. 366 (2003) in finding that it was reasonable to believe that either or both of the co-defendants solely or jointly possessed the contraband."

In addition to considering these historical findings by the trial court after the suppression hearing, as a reviewing court we must also consider any additional facts adduced at trial that relate to the probable cause question. *People v. Caballero*, 102 Ill. 2d 23, 36 (1984) (holding that a reviewing court must review all evidence presented both at hearing on motion to suppress and at trial to determine whether trial court properly admitted evidence, reaffirming *People v. La Bostrie*, 14 Ill. 2d 617 (1958)). Accordingly, we add to our probable cause consideration the testimony of Melzer, offered for the first time at trial, that he had seen defendant driving the vehicle approximately three hours earlier as it entered the Belvidere Oasis. Our analysis accepts the trial court's findings of historical fact because, assuming *arguendo* they are correct, and further considering Melzer's trial testimony—that defendant drove the vehicle three hours before—we nevertheless conclude that the troopers lacked probable cause to arrest defendant.

¶ 38    The police may arrest an individual in a public place, without a warrant, only if the arrest is supported by probable cause. U.S. Const., amend. IV; *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause in this context means officers have a reasonable ground for belief of guilt that is particularized with respect to the person seized. *Pringle*, 540 U.S. at 371. Probable cause is determined from the point of view of an objectively reasonable police officer and in consideration of the events leading up to the arrest. *Id.* Evidence obtained in violation of the fourth amendment is subject to suppression. *People v. Henderson*, 2013 IL 114040, ¶ 33.

¶ 39    Here, troopers arrested defendant for possession of a controlled substance. The elements of this offense are knowledge and possession of the drugs. *People v. Givens*, 237 Ill. 2d 311, 334-35 (2010). Possession may be actual or constructive and may also be joint. *Id.* at 335. Actual possession exists when a defendant exercises immediate and exclusive dominion or control over contraband. *Id.* Constructive possession exists when a defendant has the intent and capacity to maintain dominion and control over contraband. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). An individual's control over the area where contraband is found gives rise to an inference that he had knowledge and possession of the contraband. *Givens*, 237 Ill. 2d at 335. Defendant argues that there was not probable cause to support his actual or constructive possession of the cocaine. The State responds that the evidence supports the trial court's finding that defendant constructively possessed the cocaine.

¶ 40    An individual's mere presence in a vehicle where contraband is found is insufficient to establish knowledge of the contraband. *Love*, 404 Ill. App. 3d at 788. Nevertheless,

"knowledge may be inferred from several factors, including (1) the visibility of the contraband from the defendant's location within the car; (2) the amount of time that the defendant had to observe the contraband; (3) any gestures or movements made by the defendant that would suggest that the defendant was attempting to retrieve or conceal the contraband; and (4) the size of the contraband." *Id.*

A defendant's regular, ongoing control of a vehicle or his connection to the contents of a vehicle are also indicative of a defendant's knowledge of other items present. *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 46.

¶ 41    Defendant contends that the trial court's reliance on *Pringle* was misplaced and that the facts of this case are more analogous to the facts in *People v. Drake*, 288 Ill. App. 3d 963

- 8 -

(1997). Relying on *Drake*, defendant argues that the probable cause finding should be reversed because the troopers lacked evidence that (1) defendant had knowledge, at the time of the arrest, that the urn was in the trunk or that the cocaine was in the urn or (2) defendant had dominion and control over the cocaine or the vehicle. The State counters that the trial court was correct in concluding that the troopers had probable cause to arrest defendant for possession of cocaine based upon the analysis in *Pringle.*

¶ 42    In *Pringle*, the United States Supreme Court determined that officers had probable cause to arrest a passenger for possession of cocaine where an officer stopped the vehicle occupied by the passenger and two other men at 3:16 a.m., the officer discovered five glassine baggies of cocaine behind the back seat armrest and $763 cash in the glove compartment, and all three men denied ownership of the cocaine and cash. *Pringle*, 540 U.S. at 371-72. The Court concluded that, under the circumstances, a reasonable officer could have inferred that any of the occupants (or all three) had knowledge of the cocaine located in the passenger compartment of the car and exercised dominion and control over it. *Id.* at 372, 373 (further explaining that "it was reasonable for the officer to infer a common enterprise among the three men").

¶ 43    In *Drake*, this court concluded that the State failed to show officers had probable cause to arrest a passenger in a vehicle in which contraband was found. *Drake*, 288 Ill. App. 3d at 964. There the officers stopped the vehicle in which the defendant was a front seat passenger and, with the driver's consent, searched the vehicle and discovered a backpack containing a handgun, $3100 cash, and marijuana in the locked trunk. *Id.* at 964-65. At the hearing on the defendant's motion to quash arrest and suppress evidence, an arresting officer testified that he knew the defendant had a gang affiliation and that the vehicle had just left a house associated with that gang. *Id.* at 965-66. This court concluded that the defendant's mere presence as a passenger in the vehicle was insufficient to establish that he had immediate possession of, or exercised any degree of control over, the contraband located in an enclosed container within a locked trunk. *Id.* at 966. Further, this court concluded that the State had not shown that the defendant had any knowledge of the contraband. *Id.* at 969. Thus, police lacked probable cause to arrest the defendant. *Id.*

¶ 44    With these cases in mind, we note initially that no evidence was presented that defendant ever was in a position to see the contents of the trunk. The interior of the trunk was not visible from the passenger compartment of the vehicle, and Melzer never testified that defendant or Brown opened the trunk at the Belvidere Oasis when he observed the vehicle three hours earlier. Nor did defendant make any movements suggestive that he was aware of the contraband during the stop. See *Love*, 404 Ill. App. 3d at 788 (concluding trial court's finding that the defendant had constructive possession of bag containing cannabis and gun was supported by testimony that the defendant had been partially sitting on the bag for an hour). Indeed, unlike Brown, defendant's demeanor was calm, and he did not appear nervous. Finally, there was no evidence of defendant's regular, ongoing control of the vehicle or his connection to the contents of a vehicle that would support the inference that defendant knew about the cocaine. See *Bogan*, 2017 IL App (3d) 150156, ¶¶ 46-47 (concluding inference that the defendant had knowledge of the contents of a vehicle was supported by the defendant's ownership of the vehicle and the presence of items connected to the defendant, including receipts bearing his signature, his health insurance card, a box with his fingerprint, and weapons). None of defendant's property was located in the vehicle, the vehicle was not registered to defendant, and defendant was not driving the vehicle at the time of the stop.

Certainly, the absence of the above types of evidence does not support an inference that defendant had knowledge or control of the urn.

¶ 45    Nor does Melzer seeing defendant driving the vehicle three hours earlier appreciably move the probable cause ball in the State's favor. On road trips it is not uncommon for the occupants of a car to take turns driving and, without more information, such is not inherently suspicious. Similarly, the varying accounts of Brown and defendant following the stop do not support the State's probable cause calculus. We recognize that a suspect's vague and implausible responses to police questioning may support an inference that the suspect is lying, which in turn could support an inference of a guilty mind. *District of Columbia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 587 (2018). But it is not clear that defendant here was lying. Brown told Melzer that the men had traveled to Chicago to drop Brown's son off with Brown's mother. Defendant, meanwhile, told Trooper Taylor that the men had traveled to buy a pair of shoes at Nike Town in Chicago for Brown's daughter.[2] The discrepancy in their stories does not necessarily mean either man was lying—it is after all possible that the men split up after arriving in Chicago to do what they said they had done or that they did both things. It is also possible that defendant was being truthful and Brown was being untruthful. Defendant's explanation for their travel, even when taken with Brown's explanation, was neither vague nor implausible. See *id.* at ___, 138 S. Ct. at 587. Without more, the statements do not support the inference of a guilty mind on the part of defendant.

¶ 46    Moreover, to the extent the inconsistency did suggest deception, defendant's behavior was much less suspicious than Brown's. Trooper Taylor testified that defendant's demeanor was cooperative and polite, and he did not appear nervous during their conversation. In contrast, Melzer testified that Brown was nervous during the stop. In response to Melzer's asking Brown why Trooper Taylor's K-9 partner would alert to the presence of narcotics, Brown can be heard on Melzer's dashcam video admitting to using cannabis earlier in the day. Moreover, only Brown admitted to knowledge of the urn prior to defendant's arrest.

¶ 47    We further discount the relevance of other findings made by the trial court. First, that defendant and Brown embarked on a day trip from Wisconsin to Chicago, a not uncommon activity, is of slight relevance. Indeed, defendant's account that the men traveled specifically to visit Nike Town in Chicago is consistent with Melzer's testimony that he saw the men traveling eastbound (toward Chicago) approximately three hours earlier.

¶ 48    Second, defendant's familial relationship with Brown (who told Melzer that the urn was his uncle's), without further inquiry, renders the suggestion that the urn also belonged to a relative of defendant entirely speculative. Needless to say, cousins are only related to half of each other's families.

¶ 49    Third, that neither occupant identified transportation of the urn as a reason for their trip is unremarkable. There is nothing inherently suspicious about driving a vehicle with an urn in the trunk, and even if it were, such would be relevant only if it could be established that

---

[2]The State asserts in its brief that Brown denied that the men had done any shopping that day, citing to Melzer's hearing testimony and to his probable cause affidavit. But our review of the record does not reveal any testimony indicating that Brown denied shopping, and we are unable to discern this statement from the video. Melzer testified that defendant and Brown gave "conflicting stor[ies]" about their activities, but did not specifically explain how the stories were in conflict. Nor does it appear that the probable cause affidavit was ever admitted into evidence. We thus disregard this assertion.

defendant had knowledge of the urn. As noted previously, only Brown acknowledged a connection to the urn before defendant was placed under arrest.

¶ 50    Equally unavailing is the suggested inference that, simply because defendant was wearing an ankle bracelet, he had knowledge of the cocaine in the urn. The record does not suggest that the troopers were aware of the reason for the ankle bracelet, and even assuming defendant was on parole, probation, or pretrial release, this would be of no relevance without knowledge of the underlying offense. On a related note, the record does not suggest the troopers knew of defendant's prior drug offenses before placing him under arrest.

¶ 51    Furthermore, defendant's mere presence in the vehicle could not alone create a reasonable belief that defendant was involved in the criminal activity where the evidence pointed more directly to Brown's culpability. See *United States v. Di Re*, 332 U.S. 581, 592 (1948). In *Di Re*, the defendant was a passenger in a vehicle in which an illegal transaction between the driver and a police informant took place. The informant alerted police that he had arranged to purchase counterfeit coupons from the driver. Officers followed the vehicle and approached it after the transaction was complete; the informant implicated the driver, and officers arrested all three men, finding contraband in the defendant's possession. *Id.* at 583. The Court affirmed the reversal of the defendant's conviction, rejecting the government's argument that the defendant's presence gave rise to a reasonable inference that he had participated in the transaction. *Id.* at 592. It reasoned that any inference of the defendant's culpability was diminished because the informant singled out the driver but not the defendant. *Id.* at 594. The Court's reasoning in *Di Re* applies equally here, where Brown was driving the vehicle in which the contraband was found and was the only person who admitted prior knowledge of the urn. See also *Givens*, 237 Ill. 2d at 335; *Love*, 404 Ill. App. 3d at 788. Simply put, any inference of defendant's culpability based upon his presence in the vehicle, without more, was diminished by stronger evidence of Brown's culpability.

¶ 52    Taken together, the evidence adduced at the suppression hearing falls short of demonstrating that the troopers had probable cause to believe that defendant either (1) had knowledge of the urn or its contents or (2) exercised control over the urn or the vehicle. This case is distinguishable from *Pringle*, where the contraband at issue was found at 3:16 a.m. in the passenger compartment of a vehicle and was accessible by all three occupants, none of whom demonstrated a more conclusive link to the contraband than the others. See *Pringle*, 540 U.S. at 371-72. Here, the contraband was found at 1:45 p.m. in the locked trunk, and Brown's statements and conduct established a much stronger link to the contraband than defendant's. Nor was it reasonable for the troopers to infer a common enterprise based on the limited information presented by these circumstances. See *id.* at 373. Given the facts of this case, *Drake* is the more appropriate comparison.

¶ 53    Finally, the State argues in the alternative that "[t]he fact that defendant was seen driving on a suspended license alone was cause to arrest him." We note that the State did not assert this alternative basis for probable cause to arrest during the suppression hearing and makes the argument for the first time on appeal. Apart from the mere suggestion, the State does not cite to authority or develop its argument as to whether and under what circumstances it would be appropriate to consider an alternative basis for probable cause raised for the first time on appeal. The State thus forfeits this argument. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 54    For the reasons stated, we conclude that the trial court erred when it ruled that police had probable cause to arrest defendant. Defendant's motion to quash arrest and suppress evidence

should have been granted and his postarrest statements should have been suppressed. See *Henderson*, 2013 IL 114040, ¶ 33. We further observe that the State does not argue that the trial court's ruling on the suppression motion, if determined to be erroneous, was harmless error. It is the State's burden to show beyond a reasonable doubt that a constitutional error did not affect the outcome of a trial. *People v. Mullins*, 242 Ill. 2d 1, 23 (2011); see also *People v. Gregory*, 2016 IL App (2d) 140294, ¶ 29 (concluding State forfeited harmless-error analysis by failing to make harmless-error argument in its brief). Forfeiture aside, we would conclude, based on our review of the record, that the introduction of defendant's postarrest admission that the urn contained his father's ashes prejudiced defendant such that the State could not show beyond a reasonable doubt that the error was harmless.

¶ 55                        B. Sufficiency of the Evidence

¶ 56        Our conclusion requires us to assess the sufficiency of the evidence to determine if double jeopardy precludes retrial. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10; *People v. Smith*, 2015 IL App (1st) 122306, ¶ 46. The double jeopardy clause prohibits retrial of a defendant when the evidence introduced at trial, including erroneously admitted evidence, is legally insufficient to convict. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). When a reviewing court reverses for trial error where the evidence introduced was sufficient to convict, remand for a new trial is appropriate. *Id.* at 396. We review the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Id.*

¶ 57        Reviewing all of the evidence introduced at trial, we conclude that a rational trier of fact could have found defendant guilty of both possession of a controlled substance and possession with intent to deliver. The State presented evidence that defendant was a passenger in a vehicle in which troopers discovered an urn containing 135.4 grams of cocaine, defendant had driven the same vehicle earlier in the day, the vehicle was not registered to defendant or the driver, both defendant and the driver had suspended licenses, and defendant admitted that the urn contained his father's ashes. A rational trier of fact, viewing this evidence in the light most favorable to the State, could have found beyond a reasonable doubt that defendant knew the urn contained cocaine and that the urn was in his constructive possession.

¶ 58        The charge of possession with intent to deliver further required the State to prove defendant had the intent to deliver the cocaine. 720 ILCS 570/401(a)(2)(B) (West 2016); *People v. Contreras*, 327 Ill. App. 3d 405, 408 (2002). The State presented evidence that defendant had a prior conviction for delivery of heroin and testimony from an expert in the cocaine field that possession of the quantity of cocaine recovered was inconsistent with personal use and that, in his opinion, the quantity recovered was meant to be distributed. A rational trier of fact could have also found beyond a reasonable doubt that defendant had the requisite intent to deliver the cocaine.

¶ 59        The evidence presented at trial was sufficient to convict defendant of the charged counts; thus, double jeopardy does not bar retrial. We, therefore, reverse defendant's conviction and remand for a new trial.

¶ 60                              III. CONCLUSION

¶ 61        Based on our holding that the trial court committed reversible error by failing to suppress defendant's urn statement, it is unnecessary, and we decline to consider defendant's remaining

- 12 -

arguments on appeal concerning evidentiary issues and defendant's sentence. For the reasons stated above, we reverse the judgment of the circuit court of Boone County and remand for a new trial.

¶ 62          Reversed and remanded.