NOTICE

Decision filed 04/30/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220443-U

NO. 5-22-0443

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 21-CF-376 |
| | ) | |
| EDWARD FINCH, | ) | Honorable |
| | ) | Charles C. Hall, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Vaughan and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's conviction for possession of methamphetamine is affirmed where, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found him guilty beyond a reasonable doubt.

¶ 2    The defendant, Edward Finch, appeals his conviction for possession of methamphetamine. He argues that the evidence was insufficient to prove him guilty of the offense. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On July 2, 2021, the State charged the defendant with one count of possession of methamphetamine (720 ILCS 646/60(b)(3) (West 2020)). In the information, the State alleged the defendant knowingly possessed 15 grams or more, but less than 100 grams, of methamphetamine. At the defendant's April 2022 jury trial, the following testimony was presented. Connie Huffman

1

testified that, on the evening of June 30, 2021, she returned to her Rossville, Illinois, residence and discovered the defendant and a woman standing in her front yard with four dogs. She also noticed that her garage door and the lid on the chest freezer in the garage were open. She got out of her vehicle and asked the couple whether they saw someone come out of the house, to which they said no. She then checked the freezer to see how long the lid had been open and discovered that the items inside were still frozen. She also discovered that her kitchen door had been kicked in or shouldered in (she had an attached garage). Someone had also taken the ice cream from the freezer and thrown it all over the garage.

¶ 5    Huffman then went back outside and asked the couple again whether they saw anyone come out of the house. The couple said that they did not but that the house was going to be their place, and the bank was on the way with the papers saying it was their house. She began to suspect something was wrong, so she called 9-1-1 and also went to her neighbor's house for help. Her neighbor returned to the house with her and attempted to speak with the defendant. However, Huffman noted that it was a nonsensical conversation. The defendant claimed to be part of some investigation and that he had an AR-15 inside the vehicle. During the conversation, both the defendant and the woman he was with were going back and forth to their vehicle. The police eventually arrived and placed the couple under arrest after talking with them. Huffman had two neighbors who lived nearby, and her other neighbors lived "half-miles and miles" away.

¶ 6    Casey Hahne, a deputy with the Vermilion County Sheriff's Department, testified that he was dispatched to Huffman's residence for a burglary where the possible suspects were still on the scene. Upon arriving, he observed a white Honda Pilot parked in an adjacent driveway; he had been previously advised that the vehicle was the suspects' vehicle. Huffman and her neighbor were standing outside Huffman's residence. After talking to Huffman, Deputy Hahne approached the

2

Honda on the driver's side and noticed the defendant in the driver's seat and a female, who he recognized as Lacanda Smith, in the passenger seat. The vehicle was registered to Smith. Deputy Hahne asked the defendant what he was doing on the property, and he responded that he had purchased the property over the weekend from Huffman's neighbor and that he was there to observe the property. The defendant also said that he looked in the deep freezer and found a human body in there. Deputy Hahne followed up on that claim and did not find a body or any evidence of a body anywhere on the property.

¶ 7    Deputy Hahne described the interior of the vehicle as "piled with" numerous items, such as clothing and personal items that would normally be in a person's home. There were also two full-grown pit bull dogs and two puppies inside the vehicle, and the dogs were "lunging around in the backseat." Eventually, Deputy Zachary Davis arrived at the scene as backup and stayed with the defendant and Smith while Deputy Hahne walked the property with Huffman. After speaking with Huffman, Deputy Hahne decided to arrest the defendant, and he returned to the vehicle and ordered the defendant out of the vehicle. Deputy Hahne placed the defendant in wrist restraints and put him in Deputy Davis's patrol car. Deputy Davis walked with Deputy Hahne and the defendant, so Smith was left alone in the vehicle during this time.

¶ 8    Deputy Hahne then returned to the vehicle, had Smith exit, and also placed her under arrest. After arresting the couple, he searched the vehicle. During the search, he discovered a clear plastic grocery bag that had a crystalline substance inside, which he suspected to be methamphetamine, on the center console. He described it as a clear grocery sack filled with numerous crystal shards inside a Ziploc bag and that it was a large amount of methamphetamine. He acknowledged that it was not until both the defendant and Smith were removed from the vehicle that he discovered the

methamphetamine. He was looking into the vehicle from the passenger side when he observed it. He acknowledged that he never saw the defendant in possession of the methamphetamine.

¶ 9 Davis, a deputy with the Vermilion County Sheriff's Department, testified that he had encountered the defendant before June 30, 2021, on more than one occasion and that the defendant's behavior on June 30 was different. During his interaction with the defendant on June 30, Deputy Davis noted that the defendant was making very incoherent statements and was "all over the place." Based on the defendant's behavior, Deputy Davis suspected that the defendant was under the influence of something.

¶ 10 Deputy Davis watched the defendant and Smith while they were in the vehicle but did not notice them making any furtive movements. Deputy Davis acknowledged that Smith was left alone in the vehicle while the defendant was being arrested, and it was not until both the defendant and Smith were arrested that the methamphetamine was discovered in the vehicle.

¶ 11 Pat Alblinger was assigned to the Vermilion Metropolitan Enforcement Group, which was a narcotics task force that investigated narcotics crime in Vermilion County. Alblinger testified that he was supposed to interview the defendant on June 30, but the defendant could not be interviewed that night because he appeared to be under the influence of some substance.

¶ 12 The State then entered a stipulation, which provided that, if called, a forensic scientist would testify that the bag recovered from Smith's vehicle contained 83.3 grams of methamphetamine. After reading the stipulation, the State rested. The defendant presented no evidence.

¶ 13 After deliberations, the jury found the defendant guilty of possession of methamphetamine. On May 24, 2022, the defendant filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, arguing, in pertinent part, that the State failed to prove him guilty

4

beyond a reasonable doubt. After the trial court denied the defendant's motion on June 30, 2022, the court sentenced him to 10 years' imprisonment to be followed by a 1-year period of mandatory supervised release. The defendant appeals his conviction.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, the defendant argues that the State failed to prove him guilty beyond a reasonable doubt as the State failed to prove he knowingly possessed the controlled substances found in the vehicle belonging to Smith.

¶ 16    When reviewing a challenge to the sufficiency of the evidence, the appropriate standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense were proven beyond a reasonable doubt. *People v. Hampton*, 358 Ill. App. 3d 1029, 1031 (2005). This standard applies to all criminal cases, whether the evidence is direct or circumstantial. *People v. Maggette*, 195 Ill. 2d 336, 353 (2001). "Circumstantial evidence alone is sufficient to sustain a conviction where it satisfies proof beyond a reasonable doubt of the elements of the crime charged." *People v. Nesbit*, 398 Ill. App. 3d 200, 209 (2010). In reviewing a sufficiency of the evidence challenge, we are mindful that we must not retry the defendant, and it is our duty to carefully examine the evidence while giving due consideration to the fact that the trial court and jury saw and heard the witnesses. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). This court will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt. *Nesbit*, 398 Ill. App. 3d at 209.

¶ 17    Here, the defendant was convicted of possession of 15 or more grams, but less than 100 grams, of methamphetamine (720 ILCS 646/60(b)(3) (West 2020)). The elements of this offense are knowledge and possession of the requisite amount of methamphetamine. *People v. Horn*, 2021

IL App (2d) 190190, ¶ 39. In the present case, at the trial, the parties stipulated that the substance recovered from Smith's car contained methamphetamine and that the weight of the recovered substance was 83.3 grams. Thus, the only issue on appeal is whether the defendant knowingly possessed the methamphetamine.

¶ 18     A defendant's possession of a controlled substance may be actual or constructive and may also be joint. *Id.* However, either type of possession must be knowing. *People v. Davis*, 50 Ill. App. 3d 163, 167 (1977). Actual possession exists when a defendant exercises immediate and exclusive dominion or control over the controlled substance. *Horn*, 2021 IL App (2d) 190190, ¶ 39. Constructive possession exists when a defendant has the intent and capacity to maintain dominion and control over the controlled substance. *Id.* Constructive possession may be established by showing that defendant had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010).

¶ 19     Frequently, constructive possession will manifest itself in scenarios where contraband is discovered in a vehicle that defendant is driving. *People v. Davis*, 2021 IL App (3d) 180146, ¶ 75. In this scenario, fact finders may logically surmise that defendant knowingly possessed the contraband discovered within the vehicle that defendant was operating, provided that the contraband was located in a place that was subject to defendant's immediate and exclusive control. *Id.* Thus, a defendant's control over the area where the substance is found gives rise to an inference that he had knowledge and possession of the controlled substance. *Horn*, 2021 IL App (2d) 190190, ¶ 39.

¶ 20     A defendant's mere presence in a vehicle where the contraband is found, without more, is insufficient to establish knowledge of the contraband. *Id.* ¶ 40. However, knowledge may be

6

inferred from several factors, including (1) the visibility of the contraband from defendant's location in the car, (2) the amount of time that defendant had to observe the contraband, (3) any gestures or movements made by defendant that would suggest that defendant was attempting to retrieve or conceal the contraband, and (4) the size of the contraband. *Love*, 404 Ill. App. 3d at 788. Courts should also consider any other relevant circumstantial evidence of knowledge, such as fingerprints, that links defendant to the recovered substance. *People v. Bailey*, 333 Ill. App. 3d 888, 892 (2002).

¶ 21    The questions of whether defendant had knowledge and possession are questions of fact to be resolved by the jury. *People v. Scott*, 152 Ill. App. 3d 868, 871 (1987). The knowledge and possession elements are fact-sensitive questions typically proved with circumstantial evidence. *People v. Beverly*, 278 Ill. App. 3d 794, 798 (1996); see also *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 15.

¶ 22    Applying these principles in light of the facts presented here, we conclude that a rational trier of fact could have found the defendant guilty of possession of methamphetamine beyond a reasonable doubt. The evidence the State relied on to prove knowing possession was as follows. Huffman returned to her home to find the defendant and Smith standing on her front lawn. She only had two neighbors who lived nearby. Her garage door was open, ice cream taken from her garage freezer was thrown all over the garage, and the door leading into her house had been kicked in. When Huffman questioned the defendant, he informed her that he had purchased the house, and he was there to observe the property. While Huffman was waiting for the police to arrive, she noticed that the defendant and Smith were going back and forth to their vehicle. Also, the defendant continued making nonsensical statements, and at one point, claimed to have an AR-15 in the vehicle.

¶ 23　　When the police arrived at the residence, the defendant and Smith were in their vehicle; the defendant was sitting in the driver's seat while Smith was sitting in the front passenger seat. Deputy Hahne testified that he approached the vehicle from the driver's side and began questioning the defendant and Smith. The defendant again claimed that he had just purchased the property and also claimed that there was a human body in the garage freezer. Deputy Hahne later confirmed that there were no human remains on the property. Deputy Hahne noted that the interior of the vehicle was piled with numerous items, such as clothing and other personal items, and that four dogs were "lunging around" in the backseat.

¶ 24　　Shortly thereafter, the defendant was placed under arrest and was escorted to a patrol car. At this time, Smith was left alone in the vehicle. The officers then returned to arrest Smith. After both the defendant and Smith were placed under arrest, the officers searched the vehicle. During the search, they discovered a crystalline substance, which was later determined to be methamphetamine, inside a clear bag on the center console inside the vehicle. Although Deputy Hahne did not see this bag when he initially questioned the defendant, the vehicle was cluttered, and four dogs were "lunging around" in the backseat. Moreover, Deputy Davis testified that he had multiple, previous interactions with the defendant, and the defendant's behavior on this date was different. Deputy Davis noted that the defendant was making very incoherent statements and was "all over the place," leading Deputy Davis to conclude that the defendant was under the influence of some substance. Also, the defendant was unable to be interviewed after his arrest because he was under the influence of a substance.

¶ 25　　In arguing that the above evidence was insufficient to prove him guilty beyond a reasonable doubt, the defendant notes that Smith owned the vehicle in which the methamphetamine was found, the methamphetamine was not discovered until after Smith was left alone in the vehicle

while the defendant was being arrested and escorted to a squad car, there was no fingerprint or DNA evidence that connected him to it, and the officers did not see him in physical possession of it. He argues that there was only speculation that the methamphetamine was on the center console when he was inside the car (as opposed to being placed there by Smith after he was arrested).

¶ 26    Furthermore, the defendant notes that the methamphetamine was in a tied-up plastic bag, which was inside another, thicker plastic bag; Smith's car was littered with personal and household items; the methamphetamine could have easily been mistaken for another piece of trash in the cluttered car; and the bag itself was not so large as to be obviously visible in a messy car. He argues that there was no evidence presented that he had the opportunity to observe the methamphetamine, about how long he was in the car, or about how he got to Huffman's property. Also, he notes that Deputy Davis specifically testified that he did not make any movements that would indicate an effort to conceal the bag of methamphetamine while he was inside the car. Lastly, he contends that there was no physical evidence connecting him to the recovered methamphetamine.

¶ 27    The jury was required to resolve the question of fact regarding the defendant's knowledge and possession of the methamphetamine. Based on the above evidence, a rational trier of fact could have found that the defendant was under the influence of methamphetamine based on his described behavior and the methamphetamine found in the vehicle; the methamphetamine was inside the vehicle while he was going back and forth to the vehicle and/or while he was sitting in the driver's seat; the clear, sandwich size bag was plainly visible to him while sitting in the driver's seat and readily accessible to him; and although Deputy Hahne did not immediately observe the methamphetamine while standing outside the vehicle questioning the defendant, it was reasonable that it would not be visible from that vantage point due to the vehicle being cluttered (or missed due to the cluttered vehicle and the distraction of the "lunging" dogs in the backseat). Viewing the

9

evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could find that the defendant had actual knowledge of the presence of the methamphetamine and possessed it on the day in question based on the circumstances described by the officers. Accordingly, we conclude the State proved the defendant guilty beyond a reasonable doubt of the offense of possession of methamphetamine.

¶ 28                                    III. CONCLUSION

¶ 29     For the foregoing reasons, we affirm the judgment of the circuit court of Vermilion County.


¶ 30     Affirmed.