# Illinois Official Reports

## Appellate Court

---

### *People v. Davis*, 2021 IL App (3d) 180146

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE ANDREW DAVIS, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-18-0146 |
| Filed | August 27, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 16-CF-191; the Hon. Kevin W. Lyons, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James E. Chadd and Thomas A. Karalis, of State Appellate Defender's Office, of Ottawa (William L. Breedlove, Breedlove Legal LLC, of Moline, of counsel), for appellant.<br><br>Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justice Lytton concurred in the judgment and opinion.<br>Presiding Justice McDade specially concurred, with opinion. |

**OPINION**

¶ 1        The defendant, Maurice Andrew Davis, was charged with unlawful possession of a weapon by a felon and unlawful possession of a controlled substance. Prior to trial, defendant filed a motion requesting the suppression of evidence seized due to the absence of probable cause supporting the issuance of the search warrant. The trial court properly denied defendant's motion to suppress, but defendant's convictions are reversed due to the insufficiency of the State's evidence pertaining to constructive possession.

¶ 2                                    I. BACKGROUND

¶ 3        On March 22, 2016, the State charged defendant by indictment with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)) (count I), alleging that on or about March 10, 2016, defendant knowingly possessed a firearm, being a handgun, and had been previously convicted of a felony offense in Peoria County case No. 10-CF-73. The State also charged defendant with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) (count II), alleging that on or about March 10, 2016, defendant knowingly and unlawfully possessed a controlled substance containing cocaine.

¶ 4                          A. Pretrial Suppression Proceedings

¶ 5        On May 10, 2017,[1] defendant filed an amended motion to quash search and/or suppress evidence (motion to suppress) requesting the suppression of evidence seized during the execution of a search warrant at 1526 W. Smith Street, Peoria, Illinois, on or about March 9, 2016. Defendant argued that the search and seizure was unconstitutional because the complaint for the search warrant (sworn complaint) was insufficient on its face and failed to establish probable cause to search 1526 W. Smith Street, Peoria, Illinois. Defendant's motion to suppress alleged the sworn complaint failed to show a "nexus" between defendant and the address to be searched. The allegations contained in the motion to suppress will be set forth in more detail in the analysis to follow.

¶ 6        On May 10, 2017, the trial court conducted a hearing on defendant's motion to suppress. At the hearing, defendant rested his argument entirely on the information set forth in the sworn complaint. The four-page sworn complaint, dated March 9, 2016, contained the information summarized below. Police Sergeant John Matthew Briggs (complainant), who was employed by the City of Peoria, received information from a confidential informant that defendant was selling crack cocaine from multiple locations, including 1526 W. Smith Street in Peoria. After viewing a photo array depicting several black males with similar facial characteristics, including defendant's photo, the informant identified defendant as the person selling crack cocaine from 1526 W. Smith Street. As part of his investigation, complainant learned that Monica Parker rented the residence at 1526 W. Smith Street.

¶ 7        According to the sworn complaint, the "ADSI report database" indicated that defendant reported his home address to law enforcement as 2804 W. Humboldt Street in April 2015. Monica Parker also resided at 2804 W. Humboldt Street in April 2015. However, the current

[1]Defendant filed his original motion to suppress on April 17, 2017.

resident of 2804 W. Humboldt Street stated that Parker was no longer residing there and had not resided at that address since December 2015.

¶ 8 Complainant also averred that within the 72 hours before March 9, 2016, the date of the sworn complaint,[2] Officer Franklin was assigned to observe the activities at 1526 W. Smith Street. On one occasion, Franklin observed defendant enter the residence through the front door without knocking or otherwise seeking permission to enter. Franklin observed at least three additional individuals present at the address that day, including Kendrick D. Wilson, Curtis K. Herron, and Jaylan S. Nathan (Jaylan). The sworn complaint listed the criminal histories of defendant and those persons Franklin observed to be present at 1526 W. Smith Street. The criminal histories included various convictions for drug and weapons offenses.

¶ 9 In support of the reliability of the informant, complainant explained that the informant had, on two previous and unrelated occasions, provided complainant with reliable information pertaining to purchases of substances containing cocaine. In addition, the complaint included the following statement from complainant:

"On at least two separate occasions within the last 30 days, the most recent having been within the last 72 hours, Complainant caused Informant to be thoroughly searched with nothing illegal being found. Complainant provided Informant with a certain amount of confidential funds. Surveillance officers watched Informant enter 1526 W. Smith St., remain for a few moments and exit. Informant returned directly to Complainant and handed Complainant a quantity of purported crack cocaine. Complainant tested the purported crack cocaine using the Valtox test kit and received a positive reaction for the presence of cocaine by color change. Informant stated the black male who sold the Informant crack cocaine was [defendant], D.O.B. 06/20/88, black male, A.K.A. 'Reese' whom Informant previously described to Complainant."

¶ 10 After reviewing the information set forth in the sworn complaint, a judge granted complainant's request for a search warrant allowing law enforcement officers to search defendant's person and the residence at 1526 W. Smith Street.

¶ 11 At the conclusion of the motion hearing, the circuit court stated the court's interpretation of the 72-hour language contained in the sworn complaint, providing, "I think he's saying he did it twice, and he is detailing the most recent one." The court found "that the description provided in the complaint is sufficient to sustain a threshold of probable cause with regard to 1526 West Smith Street." Consequently, the court denied defendant's motion to suppress and the matter proceeded to a jury trial.

¶ 12                                  B. Jury Trial/The State's Case
¶ 13                                      1. Officer Franklin
¶ 14 Defendant's jury trial began on December 18, 2017. At trial, City of Peoria Police Officer Franklin testified that he worked in the Special Investigations Division on March 9 and 10, 2016. As part of an investigation into "[d]rugs and guns," Franklin conducted surveillance of the residence at 1526 W. Smith Street. On March 9, 2016, Franklin observed defendant and Jaylan exit a vehicle parked in front of the residence, walk to the front door of the residence,

_____

[2]The implications of the 72-hour language are subject to argument by defendant on appeal and will be addressed later in this order.

- 3 -

and enter the residence without knocking or using a key. Franklin observed two other males remain in the vehicle. Franklin did not observe either defendant or Jaylan carrying items out of the residence or making multiple trips back and forth from the vehicle to the residence. The next day, March 10, 2016, Franklin observed defendant walk out the front door of 1526 W. Smith Street and walk around the side of the residence toward the back. Franklin also observed Jaylan at the residence that day.

¶ 15 On cross-examination, Franklin testified that he did not have a view of the back door of the residence from his vantage point. Franklin identified the two males that remained in the vehicle parked in front of the residence on March 9, 2016, as Kendrick Wilson and Curtis Herron. Franklin testified that defendant and Jaylan eventually exited the residence on March 9, 2016, entered the vehicle, and left the residence. Franklin did not observe any other individuals enter or exit the property that day.

¶ 16 Franklin explained that he and other officers returned to conduct surveillance at the residence on the date the search warrant was executed, March 10, 2016. According to Franklin, sometime after approximately 11 a.m. on March 10, 2016, but before officers arrived to execute the search warrant, Franklin observed defendant and Jaylan exit through the front door of the residence and walk around the back side of the residence.

¶ 17 Once other officers arrived to execute the search warrant for the residence, Franklin remained in his surveillance position. According to Franklin, the residence was vacant at the time of the search.

¶ 18                                                    2. Officer Beck

¶ 19 City of Peoria police officer Beck testified that he was part of the "Target Defender Unit" that executed the search warrant for the residence located at 1526 W. Smith Street on March 10, 2016. Beck explained that his role was to assist in locating and detaining defendant as the search warrant was being executed at the residence. According to Beck, defendant was located and detained by officers just around the corner from 1526 W. Smith Street. During the arrest, Beck searched defendant's person and discovered a key in his front right coin pocket.[3] Later, it was confirmed that this key opened the front door of the residence at 1526 W. Smith Street.

¶ 20 After detaining defendant, Beck returned to the residence and assumed the role of evidence officer. Beck added that in this capacity, he gathered and documented the illegal items discovered by law enforcement during the execution of the search warrant. The State admitted and published People's exhibit No. 1, which Beck identified as a videotape of the premises and the items collected. Beck narrated the events depicted on the videotape as it was published to the jury. Beck testified that the videotape depicted the successful usage of the key discovered on defendant's person to unlock the front door of the residence. In a couch in the front bedroom, officers located a wallet containing $1240 and defendant's identification. Officers discovered mail addressed to defendant in a kitchen drawer. A digital scale bearing a white powdery residue and plastic sandwich bags were also recovered in the kitchen cabinets. Additionally, Beck testified that he discovered two firearms and a box of ammunition on top of a shelf in the closet of the back bedroom.[4]

_____

[3]The key Beck discovered was admitted into evidence as People's exhibit No. 2.

[4]The State admitted People's exhibit No. 5, the box of ammunition; People's exhibit No. 6, the article of mail addressed to defendant; People's exhibit No. 7, the wallet containing $1240; and

¶ 21 On cross-examination, Beck testified that the identification and the article of mail discovered in the residence listed defendant's address as "Garden." Mail addressed to other persons at other addresses was also located in the kitchen drawers and elsewhere throughout the residence.

¶ 22                                    3. Officer Logan

¶ 23 City of Peoria police officer David Logan testified that he conducted surveillance of the residence and later participated in the execution of the search warrant on March 10, 2016. Logan observed the residence on March 10, 2016, for three to four hours prior to the execution of the search warrant. During that three- to four-hour timeframe, Logan observed defendant exit the front door of the residence and enter a vehicle that pulled into the driveway. Defendant did not appear to be carrying anything that would indicate defendant was moving possessions out of the residence. Approximately 30 to 45 minutes later, defendant and Jaylan returned to the residence in a different vehicle. At this time, Logan observed defendant use a key to open the front door and enter the residence. Approximately one hour later, Logan observed defendant and Jaylan exit through the front door and walk toward the rear of the residence. Logan did not observe any other individuals enter or exit the residence during this timeframe on March 10, 2016.

¶ 24 Later in the investigation, Logan collected deoxyribonucleic acid (DNA) samples from defendant and Jaylan for the purpose of comparing the samples with possible DNA taken from the firearms located in the residence.[5] Logan was unable to trace ownership of either of the two firearms to defendant or Jaylan.

¶ 25 On cross-examination, Logan testified that he surveilled the residence on one other occasion prior to March 10, 2016, but he could not recall the precise date. Logan clarified that he could not see the back side of the residence from his vantage point. Consequently, Logan conceded that he was unable to determine whether individuals were entering or leaving the residence from the back door.

¶ 26                                    4. Officer Williams

¶ 27 City of Peoria police officer Williams testified that he worked in the Crime Scene Investigation Unit and was trained in fingerprint analysis and DNA collection. On March 10, 2016, Williams photographed and collected the two firearms discovered in the back bedroom of the residence. Williams identified People's exhibit No. 3 as the "loaded" Glock 26 handgun discovered in the residence. The Glock 26 had an extended magazine, allowing 22 to 28 rounds to be loaded into the magazine. Williams later discovered, based on an earlier case, that the Glock 26 had been stolen. Williams did not discover fingerprints sufficient for comparison on the Glock 26. Williams swabbed the Glock 26 for DNA.[6]

People's exhibit No. 11, the scale and the plastic sandwich bags. Further, the record establishes that the shelf referenced by Beck was located in a closet, although Beck did not mention a closet specifically.

[5]The State admitted People's exhibit No. 10, defendant's DNA buccal swab, and People's exhibit No. 13, Jaylan's DNA buccal swab.

[6]The State admitted People's exhibit No. 3, the Glock 26, and People's exhibit No. 8, the DNA swabs of the Glock 26.

¶ 28    Next, Williams identified People's exhibit No. 4, a Glock 23,[7] as the second firearm recovered from the residence. Williams did not discover fingerprints sufficient for comparison on the Glock 23. Williams swabbed the firearm for DNA.[8] Williams later submitted both firearms and the DNA swabs to the Morton Crime Lab for further testing. On cross-examination, Williams clarified that he also tested the ammunition that was discovered but was unable to detect viable fingerprints.

¶ 29                            5. Michelle Dierker

¶ 30    Michelle Dierker testified as an expert in drug analysis and chemistry. Dierker was employed by the Illinois State Police at the Morton Forensic Science Laboratory. Dierker tested the residue present on the scale contained in People's exhibit No. 11 in the crime lab and received a positive result for the presence of cocaine.

¶ 31                            6. Dustin Johnson

¶ 32    Dustin Johnson testified as an expert witness in firearms analysis and identification. Johnson testified that he received and tested People's exhibit No. 3 (the Glock 26) and People's exhibit No. 4 (the Glock 23). Johnson found the firearms to be operational. Following Johnson's testimony and a jury instruction conference, the State admitted People's exhibit No. 12, a certified copy of defendant's prior felony conviction in Peoria County case No. 10-CF-73.

¶ 33                            7. Jennifer MacRitchie

¶ 34    Jennifer MacRitchie testified as an expert witness regarding forensic biology and DNA analysis. MacRitchie conducted a DNA test on material collected from both firearms. Her tests revealed the presence of degraded DNA from at least two individuals on the Glock 26 and at least five individuals on the Glock 23. MacRitchie was unable to conclusively match the DNA detected on the firearms to DNA samples collected from defendant or Jaylan. According to MacRitchie, the DNA results did not allow her to include or exclude any person as the source of the degraded DNA, including herself.

¶ 35    The State rested following MacRitchie's testimony. The court denied defendant's motion for a directed verdict on both counts.

¶ 36                            C. Defense Witnesses
¶ 37                            1. Rosemary Davis

¶ 38    The defense first presented the testimony of defendant's aunt, Rosemary Davis (Rosemary). Rosemary testified that her sister, Monica Parker, previously lived at 1526 W. Smith Street. Rosemary believed Parker lived at 1526 W. Smith Street for approximately five months and moved out of the residence on March 9, 2016. Rosemary visited Parker at the residence daily.

---

[7]Though Williams did not specifically identify the make and/or model of the second firearm, later testimony confirmed the second firearm as a Glock 23.

[8]The State admitted People's exhibit No. 4, the Glock 23, and People's exhibit No. 9, the DNA swabs of the Glock 23.

¶ 39 Rosemary testified that defendant "sometimes" lived with her at 2317 West Garden Street on or about March 9, 2016. Rosemary explained that defendant spent most of his nights with Angel McShan at an address on McBean Street. During cross-examination, Rosemary explained that defendant utilized the 2317 West Garden Street address as his physical address for purposes of receiving a driver's license and/or mail.

¶ 40 2. Angel McShan

¶ 41 Angel McShan, the mother of defendant's children, testified that law enforcement also searched her residence at 714 West McBean Street on March 10, 2016. Defendant had been living with McShan at 714 West McBean Street for approximately one year. McShan testified that Parker resided at 1526 W. Smith Street.

¶ 42 On cross-examination, McShan testified that defendant used 2317 West Garden Street as his formal address. McShan denied telling Officer Sylvester on March 10, 2016, that defendant usually carried a large black gun with a big clip in it.

¶ 43 3. Monica Parker

¶ 44 Monica Parker testified that she began renting the residence at 1526 W. Smith Street in November 2015. According to Parker, she moved out of the residence on the evening of March 9, 2016. Parker stated that her daughter, defendant, Jaylan, Robert Nathan (Robert), Curtis Herron, and others helped her move out around 5:30 p.m. Parker rented a moving truck, and the move took approximately one hour, though some items remained in the home. Later that night, Parker gave defendant the keys to the residence. She expected defendant to remove the rest of her possessions from the residence the next day. Parker had to work early the next morning and was not inside the residence on March 10, 2016. Parker did not return to the residence until after the search on March 10, 2016. Parker testified that the back bedroom of the residence was her bedroom.

¶ 45 On cross-examination, Parker denied seeing the two firearms or the scale with cocaine residue inside the residence. Parker testified that defendant never stayed the night at the residence and did not have a key to the residence before March 9, 2016. Following Parker's testimony, the defense rested.

¶ 46 D. Rebuttal

¶ 47 1. Officer Sylvester

¶ 48 City of Peoria police officer Sylvester testified during the rebuttal portion of the trial. According to Sylvester, he spoke with McShan at her residence on March 10, 2016, following a consensual search. In response to Sylvester's questions, McShan stated that she had recently observed defendant in possession of drugs and firearms. Specifically, McShan indicated that defendant carried a large black firearm with a big clip in it. According to McShan, she and defendant were no longer dating.

¶ 49 At this time, defense counsel renewed his motion for a directed verdict. The trial court denied counsel's motion before instructing the jury.

### E. Jury Deliberation

During deliberation, the jury sent the following note to the court: "A person has constructive possession when he lacks actual possession of a thing but he has both the power and intention to exercise control over a thing. *** What defines the intention to exercise control?" After consulting with the parties, the court responded that the jury had received all the instructions from the court as needed for the jury to consider the evidence and reach a verdict on the charges. Thus, the jury should use its own interpretation to reach a determination. The jury found defendant guilty on both counts.

### F. Posttrial Motion

On January 19, 2018, defendant filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict. Defendant's motion challenged the circuit court's rulings denying defendant's motion for a directed verdict and also asserted the State's evidence was not sufficient to prove defendant had constructive possession of the scale containing the controlled substance or the firearms. The court denied defendant's posttrial motion. The court sentenced defendant to concurrent two-and-a-half year sentences on both counts. Defendant appeals.

### II. ANALYSIS

In this appeal, defendant challenges the court's pretrial ruling denying defendant's motion to suppress. In addition, defendant argues the State's evidence, presented at trial, was insufficient. Alternatively, defendant seeks to have his conviction for unlawful possession of a weapon by a felon, as alleged in count I, set aside due to the vagueness of the language of the indictment. The State asserts the circuit court properly denied the motion to suppress and submits that the evidence presented at trial was sufficient to establish defendant's constructive possession of the controlled substance and firearms. In addition, the State contends that count I of the indictment, alleging the offense of unlawful possession of a weapon by a felon, was sufficient to prevent future double jeopardy concerns.

### A. Motion to Suppress/Probable Cause for Search Warrant

First, defendant maintains that he is entitled to have his convictions reversed because the circuit court improperly denied his motion to suppress. On appeal, defendant argues that the contents of the sworn complaint requesting a search warrant, even if taken as true, failed to establish the requisite probable cause to justify the issuance of the search warrant.

This court applies a two-part standard of review when assessing the denial of a motion to quash arrest and suppress evidence. *People v. Grant*, 2013 IL 112734, ¶ 12. We review the circuit court's factual findings against the manifest weight of the evidence; however, we review the court's ultimate ruling on the motion to suppress evidence *de novo*. *People v. Manzo*, 2018 IL 122761, ¶ 25.

The relevant case law instructs that a search warrant has been erroneously issued if there is no probable cause to believe that a violation of the law has taken place and that evidence of the violation would likely be found in the location to be searched. *Id.* ¶¶ 29-30. To establish probable cause, there must exist some nexus between the criminal offense, the items sought, and the place to be searched. *Id.* ¶ 35. A probable cause determination turns on the totality of

the circumstances known to the officers and the court when the warrant is applied for and is based upon commonsense, rather than technical, considerations. *Id.* ¶¶ 29-30. Unlike the quantum of proof necessary to obtain a criminal conviction, the probability of criminal activity, rather than proof beyond a reasonable doubt, is the proper standard for determining the existence of probable cause in the context of a search warrant. *People v. Tisler*, 103 Ill. 2d 226, 236 (1984).

¶ 60    Here, defendant argues that the sworn complaint did not contain sufficient language allowing the court to conclude that evidence of criminal activity was present in the residence before the informant entered that location on prior occasions. In other words, defendant claims that the court should have considered whether the informant brought the contraband into the residence before returning after the purported controlled buy. We are not persuaded by defense counsel's unfounded speculation.

¶ 61    On appeal, defense counsel has repeatedly asserted that the language contained in the sworn complaint describes that only one controlled purchase took place at 1526 W. Smith Street before the search warrant was issued. However, when ruling on the motion to suppress, the circuit court rejected this construction of the sworn complaint. In fact, the circuit court found that the sworn complaint documented two separate controlled purchases of narcotics at the residence. The circuit court's finding is supported by a reading of the plain language at issue. Contrary to defendant's contention, the plain language of the sworn complaint clearly documents "at least" two controlled buys within the 30 days preceding the sworn complaint.

¶ 62    Defendant also challenges the reliability of the informant's second controlled purchase of a controlled substance from defendant at 1526 W. Smith Street. Defendant claims the sworn complaint stated that the informant was searched sometime within 72 hours of the second controlled purchase and was not immediately searched before entering 1526 W. Smith Street to purchase narcotics. Based upon our careful review, we conclude defendant is also misreading the following language in the sworn complaint:

> "On at least two separate occasions within the last 30 days, the most recent having been within the last 72 hours, Complainant caused Informant to be thoroughly searched with nothing illegal being found. Complainant provided Informant with a certain amount of confidential funds. Surveillance officers watched Informant enter 1526 W. Smith St., remain for a few moments and exit. Informant returned directly to Complainant and handed Complainant a quantity of purported crack cocaine. Complainant tested the purported crack cocaine using the Valtox test kit and received a positive reaction for the presence of cocaine by color change. Informant stated the black male who sold the Informant crack cocaine was [defendant], D.O.B. 06/20/88, black male, A.K.A. 'Reese' whom Informant previously described to Complainant."

¶ 63    Clearly, the 72-hour reference, set forth above, pertains to the timing of the *last* controlled purchase relative to the presentation of the sworn complaint to the court. We conclude this language does not describe a gap in time between the search of the informant's person and the second controlled purchase at the Smith Street address. Thus, we reject defendant's interpretation of the language pertaining to the 72-hour reference as inconsistent with the record.

¶ 64    Next, we consider our supreme court's decision in *Manzo*, 2018 IL 122761. On appeal, defendant contends that *Manzo* requires a sworn complaint for search warrant to establish a nexus between defendant, the contraband, and the address to be searched—namely, 1526 W.

Smith Street. In *Manzo*, our supreme court held that a drug dealer's activities, which were loosely connected to the defendant's home, did not create probable cause to issue a search warrant for the defendant's home. *Id.* ¶¶ 36-41. However, *Manzo* is distinguishable from the case at hand because the controlled purchases of narcotics in *Manzo* did not take place at a residence, but instead took place at public locations, such as a supermarket and a liquor store. *Id.* ¶¶ 6-8. Unlike the instant case, the facts in *Manzo* were insufficient to establish that narcotics were likely to be located in the place to be searched, being the defendant's home in that case, where no person witnessed the presence of narcotics in the home.

¶ 65    We are further mindful that defendant attacks the decision granting permission to search the residence but does not challenge that portion of the document allowing law enforcement to search defendant's person. On appeal, defendant conflates the different considerations unique to each type of permitted search. Here, based on the issue defendant has presented for our review, we focus on whether probable cause was established to support the view that certain items or particular evidence of criminal activities, as identified in the sworn complaint, were likely to be present at 1526 W. Smith Street at the time the search warrant was granted. Defendant's personal relationship to the residence, while relevant, must be evaluated in the context of many considerations and should not be evaluated in isolation.

¶ 66    In this case, the sworn complaint documented at least two previous purchases of substances containing cocaine by the informant while present *inside* 1526 W. Smith Street. The sworn complaint alleged that the informant entered the address without contraband on his person and returned from that address with contraband that he handed over to law enforcement. The previously reliable informant advised officers that he purchased the contraband from defendant while inside the residence that day. The sworn complaint documented that all controlled purchases with the informant took place within the last 30 days preceding March 9, 2016, and that the last controlled purchase took place within 72 hours of March 9, 2016. The informant's representations were partially corroborated by Officer Franklin's surveillance activities, documenting that defendant entered and exited the residence at 1526 W. Smith Street on March 9, 2016, the date the search warrant was issued.

¶ 67    Although we do not find that this sworn complaint contained doubtful or marginal probable cause with respect to 1526 W. Smith Street containing evidence of illegal activity, we note that our supreme court instructs that the "resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants" because sworn complaints supporting search warrants are presumed valid. *Id.* ¶¶ 31-32. For these reasons, we conclude that the complaint established sufficient probable cause for the court to find that evidence of illegal activities would be present at 1526 W. Smith Street at the time the search warrant was issued.

¶ 68                                  B. Sufficiency of the Evidence at Trial

¶ 69    Next, we consider the sufficiency of the evidence as it relates to defendant's constructive possession of the firearms and the controlled substance. It is undisputed that defendant was not present in the residence when the search warrant was executed and that the contraband at issue was not discovered on or about defendant's person when he was detained that day in the neighborhood. The State argues we should affirm defendant's convictions where the evidence at trial, viewed in the light most favorable to the State, was sufficient to establish defendant's

control over the residence, as well as defendant's knowledge of the presence of the contraband that was ultimately discovered by law enforcement during the execution of the search warrant.

¶ 70    When faced with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006); *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, viewing the evidence in the light most favorable to the prosecution, a reviewing court is tasked with determining whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Sutherland*, 223 Ill. 2d at 242; *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

¶ 71    It is the responsibility of the trier of fact to determine the credibility of the witnesses, to weigh the witness testimony, to resolve conflicts in the evidence, and to draw reasonable inferences that flow from the evidence. *People v. Williams*, 193 Ill. 2d 306, 338 (2000); *People v. Young*, 128 Ill. 2d 1, 49 (1989). Reviewing courts must give due consideration to the reality that the trier of fact saw and heard the witnesses and the evidence firsthand. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). Ultimately, "[t]he testimony of a single witness, if it is positive and the witness credible, is sufficient to convict." *Id.* Furthermore, a conviction may be sustained solely on circumstantial evidence as well as upon direct evidence. *People v. Patterson*, 217 Ill. 2d 407, 435 (2005). A defendant's conviction will be overturned based on insufficient evidence only where the proof is so improbable or unsatisfactory that a reasonable doubt as to the defendant's guilt remains. *Williams*, 193 Ill. 2d at 338.

¶ 72    To support a conviction for the possession of contraband, in this case firearms and a controlled substance, the State must prove (1) that the defendant had knowledge of the presence of the contraband and (2) that the contraband was in the defendant's immediate and exclusive control. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. Regarding count I, the State was also required to prove that defendant had a previous felony conviction. In this case, defendant stipulated that he was a convicted felon. Consequently, defendant limits his argument to the insufficient evidence pertaining to defendant's control of the premises and the knowing possession of the controlled substance and/or either firearm.

¶ 73    At the outset, we emphasize that defendant was not charged with possession of the controlled substance and firearms based on defendant's purported previous transactions with the informant at that residence. Rather, the criminal charges against defendant stemmed from the discovery of evidence of criminal activity within that residence on March 10, 2016, after defendant was observed leaving that address.

¶ 74    The case law provides that "[c]onstructive possession exists where there is no actual, personal, present dominion over contraband, but defendant had knowledge of the presence of the contraband, and had control over the area where the contraband was found." *People v. Hunter*, 2013 IL 114100, ¶ 19. Oftentimes, the knowledge element of constructive possession may be inferred from the defendant's control of a given location. *People v. Bogan*, 2017 IL App (3d) 150156, ¶ 29. "Where there is no evidence that the defendant controls the premises, proof of mere presence, even combined with defendant's knowledge of [contraband], will not support a finding of constructive possession unless there is other circumstantial evidence of defendant's control over the contraband." *Tates*, 2016 IL App (1st) 140619, ¶ 20. Here, it is undisputed that defendant was not in the residence at the time the evidence of criminal activity was discovered. Defendant's absence meant defendant did not have immediate access to the area within the residence when the controlled substance and firearms were seized.

¶ 75    Frequently, constructive possession manifests itself in scenarios where, for instance, contraband is discovered in a vehicle that the defendant was driving. In such a clear-cut factual scenario, fact finders may logically surmise that the defendant knowingly possessed the contraband discovered within the vehicle defendant was operating, provided that the contraband was located in a place that was subject to the defendant's immediate and exclusive control. See *People v. Nesbit*, 398 Ill. App. 3d 200 (2010). Establishing the control necessary for the existence of constructive possession in the instant case is considerably more complicated than the example discussed above.

¶ 76                          1. Defendant's Control of 1526 W. Smith Street

¶ 77    First, the State's evidence did not conclusively establish, beyond a reasonable doubt, that defendant owned, rented, or even temporarily resided at 1526 W. Smith Street. See *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 29 ("Habitation of the location where contraband is found can constitute sufficient evidence of control to establish constructive possession."). The uncontroverted testimony established that defendant lived with his girlfriend, McShan, at 714 West McBean Street, or with Rosemary, Parker's sister, at 2317 West Garden Street on or about March 10, 2016. Parker testified that she rented and recently moved out of 1526 W. Smith Street and temporarily provided defendant with the key to that residence on March 9, 2016, for the limited purpose of assisting Parker when moving out of that residence. The State introduced the testimony of two officers who observed defendant, and others, coming and going from the residence on several occasions on or about March 9 and March 10, 2016, both before and after Parker stated that she gave defendant a key. However, this testimony merely established defendant's presence at the residence, not defendant's habitation of the residence.

¶ 78    Similarly, the discovery of a suspect's personal effects inside a given location may be indicative of a suspect's control over that location. See *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17; *Maldonado*, 2015 IL App (1st) 131874, ¶ 29; *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999). It is undisputed that mail bearing defendant's name was recovered in the kitchen. However, we agree with defendant's assertion that the discovery of mail bearing defendant's name and referencing a "Garden" address carries little weight as circumstantial evidence. For example, the State presented no testimony about the date the mail was postmarked. Further, additional mail addressed to other persons was also located in the kitchen and throughout the residence. The State did not present evidence regarding whether the other mail discovered was addressed to those other persons who were observed entering and exiting the residence. The absence of such information substantially weakens the significance of a single piece of mail bearing defendant's name. It is undisputed that defendant's wallet was recovered from a couch in the front bedroom. Though defendant's identification was located inside the wallet, the identification did not list 1526 W. Smith Street as defendant's address.

¶ 79    After carefully reviewing this record, we conclude that a reasonable person would not be able to conclude that defendant had exclusive control over the residence on March 10, 2016, such that defendant could be found to have knowingly possessed the contents of the entire household. However, this conclusion does not end our analysis of the sufficiency of the State's evidence. The case law instructs that even if defendant did not exclusively occupy or control the premises located at 1526 W. Smith Street, the State could meet its burden of proof regarding constructive possession by introducing direct evidence tying defendant to the controlled substance and/or the firearms. See *People v. Minniweather*, 301 Ill. App. 3d 574, 578 (1998).

- 12 -

Thus, we turn our attention upon defendant's relationship to the contraband, rather than defendant's relationship to the address.

¶ 80                                    2. Defendant's Relationship to the Seized Items

¶ 81       Here, the investigation did not reveal defendant's fingerprints or DNA on either the scale with the cocaine residue or the firearms. There was no direct evidence showing defendant touched or exerted actual control over any of these items.

¶ 82       As noted above, in addition to Parker, the lawful tenant, defendant was one of two individuals observed entering and leaving the residence during the relevant time period. Further, taking Parker's testimony as true, many more individuals, including Parker, were present in the residence the night before the search. Based on this evidence, any of those individuals was just as likely as defendant to have carried the contraband into the household.

¶ 83       It cannot be ignored that Parker admitted that the back bedroom, where the firearms were discovered, was the bedroom she occupied and considered to be her bedroom. The location of the firearms, inside a closet on the top shelf, does not suggest that defendant had reason to know of their presence. The scale containing the cocaine residue was similarly stored out of sight in a kitchen cabinet. Lastly, neither the mail addressed to defendant nor his wallet established a relationship between defendant and the contraband where these items were not located in the immediate vicinity of the contraband. Stated simply, there was no evidence directly linking defendant to the firearms or the cocaine residue other than his prior presence at 1526 W. Smith Street before the execution of the search warrant.

¶ 84       For these reasons, even viewing the evidence in the light most favorable to the State, we are unable to conclude that a rational trier of fact could deduce that defendant had knowledge and control over the controlled substance or either firearm. We reverse defendant's convictions on count I, unlawful possession of a weapon by a felon, and count II, unlawful possession of a controlled substance.[9]

¶ 85                                    C. Sufficiency of the Indictment/Double Jeopardy

¶ 86       Lastly, defendant argues that count I of the indictment, charging unlawful possession of a weapon by a felon, was insufficient to shield defendant from future prosecution based on the principle of double jeopardy. Defendant points out that the evidence at trial established the discovery of two firearms and count I failed to identify which firearm the State alleged defendant possessed. Defendant therefore speculates that the State could bring charges related to the other firearm in the future. Importantly, defendant does *not* argue that the language of the indictment prejudiced defendant in the preparation of his defense in the instant trial. Instead, defendant seeks relief based on a hypothetical scenario that is unlikely to, and has not, occurred. Thus, we conclude the issue is not ripe for our review and will not be addressed in this appeal.

---

[9]The reversal of defendant's convictions render moot the issues pertaining to a directed verdict and/or judgment notwithstanding the verdict.

¶ 87                     III. CONCLUSION

¶ 88        Defendant's convictions and the judgment of the circuit court of Peoria County is reversed.

¶ 89        Reversed.

¶ 90        PRESIDING JUSTICE McDADE, specially concurring:

¶ 91        I concur with the majority's decision reversing Davis's convictions outright in this case. I write separately to express that, for the following reasons, I believe the circuit court erred in denying Davis's motion to suppress and that the search warrant should never have issued.

¶ 92        Davis's first argument on appeal is that the circuit court erred when it denied his motion to suppress evidence. Specifically, he contends that there was a fatal flaw in the evidence to support the issuance of the search warrant because the informant was not searched for narcotics or other contraband immediately prior to making the controlled purchase.

¶ 93        Davis acknowledges that he has forfeited this argument for appellate review. He claims that the issue is reviewable under both prongs of the plain error doctrine.

¶ 94        Forfeited errors may be reviewed on appeal if clear error occurred and either the evidence is closely balanced or the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step in plain error review is to determine if error in fact occurred. *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010).

¶ 95        Our supreme court has stated the following regarding a challenge to the sufficiency of probable cause to support a search warrant:

> "Pursuant to federal and state warrant requirements, a detached judicial officer must resolve the question of whether probable cause exists to justify issuing a warrant. [*People v. Tisler*, 103 Ill. 2d 226, 236 (1984).] Whether probable cause exists in a particular case turns on the ' "totality of the circumstances and facts known to the officers and court when the warrant is applied for." ' *Id.* (quoting *People v. Free*, 94 Ill. 2d 378, 400 (1983)). Accordingly, probable cause exists in a particular case when the totality of the facts and circumstances within the affiant's knowledge at the time the warrant is applied for 'was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched.' *People v. Griffin*, 178 Ill. 2d 65, 77 (1997). It is the probability of criminal activity, rather than proof beyond a reasonable doubt, that is the standard for determining whether probable cause is present. *Tisler*, 103 Ill. 2d at 236.
>
> Whether the necessary probability exists is governed by commonsense considerations that are factual and practical, rather than by technical rules. *Id.* As the United States Supreme Court explained in *Illinois v. Gates*, 462 U.S. 213, 238 (1983):
>
> > 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'
>
> A reviewing court must not substitute its judgment for that of the magistrate in construing an affidavit but must instead merely decide whether the magistrate had a

substantial basis for concluding that probable cause existed. [*People v. McCarty*, 223 Ill. 2d 109, 153 (2006).] The court's review must not be tainted by hindsight but instead should be based upon whether ' "a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense." ' *Tisler*, 103 Ill. 2d at 237 (quoting *People v. Wright*, 41 Ill. 2d 170, 174 (1968)). Moreover, in determining whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants. *People v. Stewart*, 104 Ill. 2d 463, 477 (1984)." *People v. Manzo*, 2018 IL 122761, ¶¶ 29-31.

¶ 96    The majority has misconstrued the language of the search warrant. The operative part of the complaint for search warrant here is the statement that "[o]n at least two separate occasions within the last 30 days, the most recent having been within the last 72 hours, Complainant caused Informant to be thoroughly searched with nothing illegal being found." From a purely grammatical perspective, there are three clauses in the aforementioned sentence: (1) "[o]n at least two separate occasions within the last 30 days"; (2) "the most recent having been within the last 72 hours"; and (3) "Complainant caused Informant to be thoroughly searched with nothing illegal being found." The only independent clause is the third one. Clauses one and two are dependent clauses (*i.e.*, they depend on the third clause to make a complete, coherent sentence).

¶ 97    The subject of the independent clause is the complainant, the verb is "searched," and the object is the informant. Reading the two dependent clauses in light of the independent clause, there is no question that the sentence means (1) the informant was *searched* by the complainant on at least two separate occasions within the last 30 days, (2) *one* of those searches occurred within the 72 hours preceding the writing of the complaint for search warrant, and (3) the searches produced nothing illegal. Quite simply, there is no other way to read this sentence and no basis to read anything more into it.

¶ 98    Further, the majority's conclusion that the plain language of the operative paragraph from the complaint for a search warrant "clearly documents 'at least' two controlled buys" (*supra* ¶ 61) is profoundly incorrect. Due to the aforementioned grammatical structure of the operative paragraph's first sentence, the sentence clearly does *not* state Davis was involved in two controlled buys. Rather, it only states Davis was *searched* twice. Nothing in the rest of that paragraph, or anything else in the complaint for search warrant, states that two controlled buys involving Davis occurred. Reading the operative paragraph properly—*i.e.*, without any generous inferences in favor of the State—leads to the inescapable conclusion that Davis was allegedly involved in only one controlled buy.

¶ 99    The majority also concludes that the operative language of the complaint for search warrant, as quoted above, "does not describe a gap in time between the search of the informant's person and the second controlled purchase at the Smith Street address." *Supra* ¶ 63. That is certainly true because it contains no mention at all of any controlled buy. Thus, there is nothing in the sentence from which to conclude that a gap either did or did not exist between the search and the controlled buy, even when taking into account the rest of the paragraph, as cited by the majority in paragraph 62 (*supra* ¶ 62). Additionally, and far more importantly, there is nothing in the language that states or even suggests that the informant was searched immediately prior to his engaging in the controlled buy at issue in this case. And therein lies the crux of Davis's argument on the motion to suppress, evidenced by statements

he makes such as "[c]rucially, prior to the purchase the informant was not searched for drugs or other contraband, and there is no way of knowing from the complaint for search warrant whether or not the informant had the drugs on him when he entered the building."

¶ 100 Davis further argues that this lack of information resulted in the magistrate improperly inferring that the informant did not have any narcotics on his person when he entered the residence. Therefore, Davis continues, the magistrate lacked a substantial basis to conclude that probable cause existed to issue the search warrant. The majority does not address this specific argument. I would have addressed it and agreed with Davis that the magistrate lacked probable cause to issue the search warrant. See *People v. McCarty*, 223 Ill. 2d 109, 153 (2006).

¶ 101 My conclusion that the complaint for search warrant lacked any showing that the informant was searched immediately prior to the controlled buy is buttressed by two identical statements made by the complainant in the subsequent two paragraphs of the complaint for search warrant. When he described the reliability of the informant coming from two other occasions on which the informant had performed controlled buys, the complainant specifically stated that the informant was searched immediately prior to performing the buys: "Complainant caused Informant to be thoroughly searched and it was determined that there was no contraband on Informant's person. *Complainant then watched Informant go directly to the specific location, enter, remain a few minutes, then return directly to the Complainant.*" (Emphasis added.) We know from those two paragraphs that (1) complainant knew a search performed immediately before the controlled buy was critically important and (2) complainant knew how to say that such a search had been done. In the paragraph cited by the majority in paragraph 62 (*supra* ¶ 62), the complainant made no temporal statement to indicate a search of the informant occurred immediately prior to a controlled buy.

¶ 102 Perhaps the complainant *intended* to express the same narrative in the paragraph cited by the majority in paragraph 62 (*supra* ¶ 62), as he did in those subsequent two paragraphs, but he did not. Because he did not, there is nothing in the complaint for search warrant from which the magistrate could reasonably conclude that the informant had no cocaine in his possession when he allegedly made the purchase. I do not believe such an omission can be corrected, even under case law that states "the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants" (*Manzo*, 2018 IL 122761, ¶ 31). This is quite simply not a doubtful or marginal case. There is no factual basis asserted in the complaint for search warrant to support the magistrate's critical finding of probable cause, and the resulting issuance of the warrant cannot properly stand.

¶ 103 I would also hold that the circuit court's ruling on the motion to suppress cannot be saved by the good faith exception to the exclusionary rule, as posited by the State in its brief. The State does not include any substantive argument regarding the good-faith exception; accordingly, the State has forfeited this argument. See Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020) (requiring an appellee's brief to comply with Rule 341(h)(7), which requires points to be argued and supported by citation to authority).